Steven M. Kroll, Bar No. 216196
FORD & HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401
skroll@fordharrison.com

Jeffrey D. Mokotoff, GA Bar No. 515472
FORD & HARRISON LLP
*Admitted Pro Hac Vice*
1275 Peachtree Street, NE, Suite 600
Atlanta, Georgia 30309
Telephone: (404) 888-3800
Facsimile: (404) 888-3863
jmokotoff@fordharrison.com

Attorneys for Defendant
KNOWLEDGESTORM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| JASBIR GILL, MAHMOUD KEDKAD,<br><br>Plaintiffs,<br><br>v.<br><br>KNOWLEDGESTORM, INC., a corporation, DOES 1 through 50,<br><br>Defendants. | Case No. C 07-04112 PVT<br><br>**DEFENDANT KNOWLEDGESTORM, INC.'S SEPARATE STATEMENT IN SUPPORT OF ITS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF MAHMOUD KEDKAD**<br><br>Date: June 3, 2008<br>Time: 10:00 a.m.<br>Crtrm: 5, 4th floor<br><br>Action filed: July 13, 2007<br>Trial date: August 4, 2008 |

Defendant KnowledgeStorm, Inc. submits the following Separate Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment against Plaintiff Mahmoud Kedkad.

LA:66165.1

DEFENDANT'S SEPARATE STATEMENT IN SUPPORT OF ITS SUMMARY JUDGMENT AGAINST PLAINTIFF MAHMOUD KEDKAD

# UNDISPUTED MATERIAL FACTS AS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Kedkad is a Middle Eastern male who was born in Libya. | 1. Deposition Transcript of Mahmoud Kedkad ("Kedkad Deposition") at 8:23-9:8. |
| 2. KnowledgeStorm, Inc. was a company that provided search resources for technology solutions and information. It gave technology vendors opportunities to reach business and technology professionals as they conducted research online and gave contact information that converted them into web leads. | 2. Gay Dec., ¶ 3. |
| 3. Kelly Gay was the chief executive office and president of KnowledgeStorm. | 3. Gay Dec., ¶ ; Kedkad Deposition at 44:3-5. |
| 4. Mike Ewers was its vice president of finance and human resources. | 4. Ewers Dec., ¶ 1; Kedkad Deposition at 42:2-6. |
| 5. Jim Canfield was its vice president of sales. | 5. Kedkad Deposition at 63:7-11. |
| 6. Jason Hoback was its director of sales, reporting to Canfield. | 6. Kedkad Deposition at 63:2-6. |
| 7. Joe Brown was its western regional sales manager, reporting to Hoback. | 7. Brown, ¶ 2; Kedkad Deposition at 62:24-63:1. |
| 8. Joseph Niederberger, Lisa McGuire, Katie Kimball, Rachel Gordon, and co-plaintiff Jasbir Gill were sales executives of KnowledgeStorm and coworkers of Kedkad. | 8. Kedkad Deposition at 64:18-65:8. |
| 9. On or about October 20, 2006, Kedkad interviewed with several employees of KnowledgeStorm at its headquarters in Atlanta, Georgia. | 9. Kedkad Deposition at 41:2-45:7. |

| | |
|---|---|
| 10. On October 30, 2006, Brown offered Kedkad a sales executive position with the company. | 10. Kedkad Deposition at 54:24-55:25 & Ex. 3; Brown Dec., ¶ 2. |
| 11. Kedkad accepted the offer. | 11. Kedkad Deposition at 55:6-25 & p. 57:17-19, & Ex. 3. |
| 12. Kedkad began working for KnowledgeStorm on or about November 20, 2006. | 12. Kedkad Deposition at 56:10-20 & Ex. 3. |
| 13. Kedkad worked out of KnowledgeStorm's South San Francisco office. | 13. Kedkad Deposition at 57:13-16. |
| 14. There were approximately eight employees working in cubicles in this office. | 14. Kedkad Deposition at 57:24-58:13; McGuire Dec., ¶2. |
| 15. Kedkad had a good working relationship with most of his coworkers and, as time went on, he believed he had a "better working relationship" with the coworkers McGuire, Kimball, Gordon, and co-plaintiff Gill. | 15. Kedkad Deposition at 64:18-65:8. |
| 16. Kedkad reported directly to Brown. | 16. Kedkad Deposition at 62:24-63:1. |
| 17. Brown did not work out of the South Francisco office. | 17. Kedkad Deposition at 64:3-17. |
| 18. Brown worked out of the Atlanta office. | 18. Kedkad Deposition at 68:3-5. |
| 19. Brown traveled to the South San Francisco office once every two or three weeks. | 19. Kedkad Deposition at 68:3-5. |
| 20. Kedkad thought "[he] was a good salesman" at KnowledgeStorm. | 20. Kedkad Deposition at 83:8-21. |
| 21. Brown openly praised Kedkad for his sales efforts at the company. | 21. Kedkad Deposition at 83:8-21, Ex. 6. |
| 22. Kedkad was an above quota sales performer for the first quarter of 2007. | 22. Kedkad Deposition at 85:21-24, Ex. 6. |
| 23. Kedkad readily described himself as being "hard-working" and "very successful," during the first quarter of 2007. | 23. Kedkad Deposition at 85:9-24. |

| | |
|---|---|
| 24. Kedkad does not "live [his] life based on what other people think." | 24. Kedkad Deposition at 87:17-20. |
| 25. After his hire, Kedkad attended a training from on or about December 4 to 8, 2006, in the Atlanta office. | 25. Kedkad Deposition at 56:25-57:16. |
| 26. During the training, KnowledgeStorm held a presentation on its employment policies and procedures, including its No-Harassment policy. | 26. Ewers Dec., ¶ 2. |
| 27. At the training or at some other time in 2006, Kedkad received a copy of KnowledgeStorm's employee handbook ("Handbook"). | 27. Kedkad Deposition at 58:14-59:16. |
| 28. The Handbook included a No-Harassment policy that required an employee who "is being harassed . . . or believes his/her employment is being adversely affected by such conduct" to "immediately report their concerns to" either "Mike Ewers, Vice-President" or "Kelly Gay, CEO." | 28. Ewers Dec., ¶ 2, Ex. D, p. 3. |
| 29. During the second or third week in December 2006, Kedkad allegedly overheard Brown say to Niederberger, "What do you think of the camel jockey we've hired? Why don't you take the swat on him so he can start making some calls?" | 29. Kedkad Deposition at 98:22-99:7. |
| 30. Brown was allegedly speaking with Niederberger at Niederberger's cubicle. | 30. Kedkad Deposition at 99:20-25. |
| 31. Kedkad was walking by Niederberger's cubicle when he heard Brown's alleged remark to Niederberger. | 31. Kedkad Deposition at 99:18-25. |
| 32. Kedkad did not know the context of the remark; he was not a part of the conversation. | 32. Kedkad Deposition at 99:14-19. |
| 33. Kedkad thought the statement was about him because he was "self-conscious about making phone calls." | 33. Kedkad Deposition at 100:16-24. |

| | |
|---|---|
| 34. Kedkad never heard Brown use the term "camel jockey" on any other occasion. | 34. Kedkad Deposition at 103:3-6. |
| 35. Kedkad has heard that term "all the time" outside of his employment. | 35. Kedkad Deposition at 102:2-11. |
| 36. In the middle of January 2007, Brown allegedly asked Kedkad, "Why are you dressed like this? You think you're in the Middle East?" | 36. Kedkad Deposition at 106:9-11. |
| 37. Kedkad was not wearing anything distinctive to the Middle East. | 37. Kedkad Deposition at 106:15-17. |
| 38. He was wearing "a long shirt and pants, a heavy shirt." | 38. Kedkad Deposition at 106:12-14. |
| 39. Kedkad did not say anything in response. | 39. Kedkad Deposition at 107:1-2. |
| 40. One or two days later, Kedkad arrived at work wearing a light jacket that was long. | 40. Kedkad Deposition at 107: 3-8. |
| 41. Brown allegedly asked Kedkad, "What is this funny weird clothes you're wearing?" | 41. Kedkad Deposition at 107: 9-11. |
| 42. There was nothing distinctive about Kedkad's jacket that would suggest it was Middle Eastern. | 42. Kedkad Deposition at 107:12-15. |
| 43. Kedkad told Brown "that this is a style here." | 43. Kedkad Deposition at 107:16-22. |
| 44. During the third week of February 2007, Brown and Kedkad were having a conversation on different topics including about foreigners living in the bay area. | 44. Kedkad Deposition at 108:20-109:5 & 109:24-110:4. |
| 45. In this conversation, Brown allegedly told Kedkad that he thought there were many Indians and how they were taking all the jobs to the point were he hates them. | 45. Kedkad Deposition at 109:1-5. |
| 46. Kedkad did not say anything in response. | 46. Kedkad Deposition at 111:19-20. |

| | |
|---|---|
| 47. At the end of March 2007, Kedkad and Brown met with a prospective client. | 47. Kedkad Deposition at 124:2-17. |
| 48. After the meeting, while walking outside of the client's office building, Kedkad asked Brown what he thought of the meeting. | 48. Kedkad Deposition at 124:18-23. |
| 49. Brown allegedly stated, "You know, I think you should go back to school, learn some English, read and write so you can speak normal like us. You'll really be successful. You need it." | 49. Kedkad Deposition at 125:1-8. |
| 50. Kedkad allegedly asked Brown, "Why do you think that?" | 50. Kedkad Deposition at 125:15-16. |
| 51. Brown allegedly said that Hoback told him Kedkad made too many mistakes in his proposals. | 51. Kedkad Deposition at 125:17-19. |
| 52. Kedkad allegedly told Brown that he "made one mistake in a company's name, one line in a company's name, and [Hoback] pointed it out to [him] and it was corrected." | 52. Kedkad Deposition at 125:20-25. |
| 53. On February 21, 2007, the employees in the South San Francisco office attended a party after work. | 53. Kedkad Deposition at 119:8-19. |
| 54. Kedkad did not attend the party. | 54. Kedkad Deposition at 120:12-24. |
| 55. His coworkers allegedly told him about the party the next day. | 55. Kedkad Deposition at 119:24-120:24. |
| 56. McGuire allegedly told Kedkad that Brown told her at the party that Kedkad was not invited because he would be "scoping out terrorist targets." | 56. Kedkad Deposition at 121:13-122:8. |
| 57. At some time after the week of March 26, 2007, co-plaintiff Gill allegedly told Kedkad that Brown told her that "all Muslims are terrorists." | 57. Kedkad Deposition at 198:7-24. |
| 58. Kedkad did not witness Brown making this comment. | 58. Kedkad Deposition at 198:25-199:11. |

| | |
|---|---|
| 59.   At some time toward the end of April or beginning of May 2007, co-plaintiff Gill allegedly told Kedkad that she heard from Niederberger that Brown referred to Kedkad as a "sand nigger." | 59.   Kedkad Deposition at 200:4 - 201:9. |
| 60.   Kedkad never heard Brown use the term "sand nigger." | 60.   Kedkad Deposition at 200:4-201:9; Ex. B & C – Responses to Requests for Admissions, Nos. 23 & 24. |
| 61.   Gill also never heard Brown use the term "sand nigger." | 61.   Gill Deposition at 177:15–178:7; Ex. E & F – Responses to Requests for Admissions, Nos. 4 & 5. |
| 62.   Kedkad allegedly told Hoback of the "camel jockey" and "dress" comments at the end of January 2007. | 62.   Kedkad Deposition at 103:16-104:25. |
| 63.   He allegedly told Hoback about the "scoping out terrorist targets" comment at the end of March 2007. | 63.   Kedkad Deposition at 116:23-117:4. |
| 64.   Kedkad allegedly told Hoback about the "Indians in the area" remark in late March 2007. | 64.   Kedkad Deposition at 115:5-11. |
| 65.   He allegedly told Hoback of the March 2007 "learn some English" comment in the beginning of February 2007. | 65.   Kedkad Deposition at 126:3-127:5. |
| 66.   On the morning of April 25, 2007, Elysse Miller, the new business development representative ("BDR") assigned to help Kedkad with his sales, had a telephone conversation with Kedkad. | 66.   Miller Dec., ¶ 4; Kedkad Deposition at 127:23-128:7. |
| 67.   After this conversation, Miller reported to KnowledgeStorm that Kedkad told her, among other things, "I wish I didn't have a woman as a BDR," or words to that effect. | 67.   Miller Dec., ¶ 4; Gay Dec., ¶ 5. |
| 68.   That same afternoon, Gay interviewed Miller concerning her report. | 68.   Miller Dec., ¶4; Gay Dec., ¶ 5. |
| 69.   Gay interviewed Kedkad the following day on April 26, 2007. | 69.   Kedkad Deposition at 134:11-25; Gay Dec., ¶ 5. |

| | |
|---|---|
| 70. During the interview, Kedkad advised Gay, for the first time, that he believed there was discrimination ongoing in the South San Francisco office. | 70. Kedkad Deposition at 138:20 – 139:16, Ex. 10; Gay Dec., ¶ 5. |
| 71. Immediately after completing her interview of Kedkad regarding Miller's complaint, Gay commenced an investigation into Kedkad's complaint of discrimination. | 71. Gay Dec., ¶ 6. |
| 72. During the evening of April 26, 2007, Gay spoke with Kedkad regarding his complaint. | 72. Gay Dec., ¶ 6. |
| 73. KnowledgeStorm also interviewed Joe Brown, Jason Hoback, Kevin Cummings, Rachel Gordon, Rick Neigher, Tracy Mikolajewski, Matt Hart, and Emily Crume. | 73. Gay Dec., ¶ 6. |
| 74. KnowledgeStorm concluded that Brown did not engage in any discriminatory behavior. | 74. Gay Dec., ¶ 6. |
| 75. To minimize any further interaction between Brown and Kedkad, KnowledgeStorm began having Kedkad report to Canfield, beginning May 2007. | 75. Gay Dec., ¶ 6; Kedkad Deposition at 173:5-15. |

## UNDISPUTED MATERIAL FACTS AS TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**ISSUE ONE:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on his first claim for race harassment as a matter of law because Plaintiff cannot establish a prima facie claim.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 76. Defendant incorporates Facts 1-75 by reference. | 76. Defendant incorporates the evidence in support of Facts 1-75 by reference. |

**ISSUE TWO:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on his first claim for race harassment as a matter of law because Plaintiff could have avoided any alleged harassment if he had complied with Defendant's No-Harassment Policy.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 77. Defendant incorporates Facts 1-75 by reference. | 77. Defendant incorporates the evidence in support of Facts 1-75 by reference. |

Dated:  April 29, 2008                                FORD & HARRISON LLP


By: /s/ Steven M. Kroll
    Jeffrey D. Mokotoff
    Steven M. Kroll
    Attorneys for Defendant
    KNOWLEDGESTORM, INC.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66165.1                                          - 9 -                    DEFENDANT'S SEPARATE STATEMENT IN
                                                                             SUPPORT OF ITS SUMMARY JUDGMENT AGAINST
                                                                             PLAINTIFF MAHMOUD KEDKAD

# PROOF OF SERVICE

I, Yolanda H. Dennison, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071. On April 29, 2008, I served a copy of the within document(s):

**DEFENDANT KNOWLEDGESTORM, INC.'S SEPARATE STATEMENT IN SUPPORT OF ITS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF MAHMOUD KEDKAD**

[x] (E-Mail/Electronic Transmission) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful pursuant to the CM/ECF system of the United States District Court for the Northern District of California.

[ ] by placing the document(s) listed above in a sealed Overnite Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Overnite Express agent for delivery.

[ ] by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**VIA E-MAIL**
Brian S. Kreger, Esq.
Lamberto & Kreger
160 W. Santa Clara St., Suite 1050
San Jose, CA 95113

Attorneys for Plaintiffs
Tel: 408-999-0300
Fax: 408-999-0301
briank@lambertokreger.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 29th day of April, 2008, at Los Angeles, California.

*Yolanda H. Dennison*
Yolanda H. Dennison