Steven M. Kroll, Bar No. 216196
FORD & HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone:   (213) 237-2400
Facsimile:    (213) 237-2401
skroll@fordharrison.com

Jeffrey D. Mokotoff, GA Bar No. 515472
FORD & HARRISON LLP
*Admitted Pro Hac Vice*
1275 Peachtree Street, NE, Suite 600
Atlanta, Georgia 30309
Telephone:   (404) 888-3800
Facsimile:    (404) 888-3863
jmokotoff@fordharrison.com

Attorneys for Defendant
KNOWLEDGESTORM, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| JASBIR GILL, MAHMOUD KEDKAD,<br><br>Plaintiffs,<br><br>v.<br><br>KNOWLEDGESTORM, INC., a corporation, DOES 1through 50,<br><br>Defendants. | Case No. C 07-04112 PVT<br><br>**DEFENDANT KNOWLEDGESTORM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF JASBIR GILL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      June 3, 2008<br>Time      10:00 a.m.<br>Crtrm:   5, 4th floor<br><br>Action filed:  July 13, 2007<br>Trial date:  August 4, 2008 |

1    TO PLAINTIFF JASBIR GILL AND HER ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on June 3, 2008, at 10:00 a.m., or as soon

3    thereafter as the matter may be heard in Courtroom 5, 4th floor of the United States

4    District Court, Northern District of California, San Jose Division, located at 280

5    South 1st Street, San Jose, California 95113, defendant KnowledgeStorm, Inc.

6    ("Defendant") will and does hereby apply to this court for an order granting

7    summary judgment in its favor and against plaintiff Jasbir Gill ("Plaintiff").

8    This motion is made on the grounds that Plaintiff's claims for racial

9    harassment, retaliation, and wrongful termination in violation of public policy

10   against Defendant have no merit, that there is no triable issue of material fact as to

11   the legal issues raised therein, and that Defendant is entitled to judgment on

12   Plaintiff's claims as a matter of law.

13   In the alternative, Defendant will move, and by this motion hereby does

14   move, this court for an order granting partial summary judgment in its favor and

15   against Plaintiff with respect to the following issues:

16   Issue One:  Defendant is entitled to partial summary judgment in its favor

17   and against Plaintiff on her first claim for racial harassment because Plaintiff cannot

18   establish a prima facie claim as a matter of law.  (Facts 1, 4-12, 14-20, and 26-60.)

19   Issue Two:  Defendant is entitled to partial summary judgment in its favor

20   and against Plaintiff on her first claim for racial harassment because Plaintiff could

21   have avoided any alleged harassment if she had complied with Defendant's No-

22   Harassment Policy as a matter of law.  (Facts 21-25 and 52-56 and 58-60.)

23   Issue Three:  Defendant is entitled to partial summary judgment in its favor

24   and against Plaintiff on her second claim for retaliation because she cannot

25   establish a prima facie claim as a matter of law.  (Facts 1, 10-15, 18-60.)

26   Issue Four:  Defendant is entitled to partial summary judgment in its favor

27   and against Plaintiff on her second claim for retaliation because Plaintiff cannot

28   rebut Defendant's legitimate, nonretaliatory reason for terminating her employment

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                          - 2 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                            JUDGMENT AGAINST PLAINTIFF GILL

1    as a matter of law.  (Facts 61-65.)

2       <u>Issue Five</u>:  Defendant is entitled to summary judgment in its favor and

3    against Plaintiff on her third claim for wrongful termination in violation of public

4    policy because she cannot establish a prima facie claim as a matter of law.  (Facts

5    10-12, 14, and 66-68.)

6       <u>Issue Six</u>:  Defendant is entitled to summary judgment in its favor and

7    against Plaintiff on her third claim for wrongful termination in violation of public

8    policy because Plaintiff cannot rebut Defendant's legitimate, nonretaliatory reason

9    for terminating her employment as a matter of law.  (Facts 61-65.)

10       This motion is based upon this notice of motion and motion, the

11    memorandum of points and authorities, the separate statement of uncontroverted

12    facts, the evidence submitted in support of the this motion, all papers and pleadings

13    filed by the parties herein, and upon any other oral or documentary evidence that

14    may be timely presented prior to or at the hearing of this motion.

15

16    Dated:  April 29, 2008         FORD & HARRISON LLP

17

18                    By: <u>/s/ Steven M. Kroll</u>

19                      Jeffrey D. Mokotoff
                      Steven M. Kroll

20                      Attorneys for Defendant
                      KNOWLEDGESTORM, INC.

21

22

23

24

25

26

27

28

LA:66314.2          - 3 -          DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................1
II.  STATEMENT OF FACTS .............................................................1
     A.   The Parties and Witnesses ...............................................1
     B.   Gill's Employment with KnowledgeStorm.........................2
     C.   KnowledgeStorm's No-Harassment Policy ........................2
     D.   Alleged Harassment by Joe Brown ....................................3
          1.   Alleged statements witnessed by Gill .......................3
          2.   Alleged statements never witnessed by Gill ..............4
     E.   Gill's Trip to India and Relationship with Brown ..............4
     F.   Gill's Failure To Report Harassment .................................5
     G.   Gill's Termination of Employment ....................................6
III. SUMMARY JUDGMENT STANDARD .........................................7
IV.  ARGUMENT ...........................................................................7
     A.   Plaintiff's Racial Harassment Claim Is Without Merit .......7
          1.   Plaintiff cannot establish a prima facie claim of racial harassment against KnowledgeStorm ...........................8
               a.   The conduct complained of by Plaintiff was not "because of" her race ......................................8
               b.   The conduct complained of by Plaintiff was not "sufficiently severe or pervasive" to alter the conditions of employment and create an abusive working environment .................................... 10
          2.   Plaintiff could have avoided any alleged harassment if she had complied with KnowledgeStorm's complaint procedures under its No-Harassment policy .................. 13
     B.   Plaintiff's Retaliation Claim Is Without Merit................... 15
          1.   Plaintiff cannot establish a prima facie case of retaliation because she did not engage in "protected activity" by reporting conduct that she did not "reasonably and in good faith" believe to be unlawful racial harassment............. 16
          2.   KnowledgeStorm terminated Plaintiff's employment for legitimate, nonretaliatory reasons ............................ 17
     C.   Plaintiff's Wrongful Termination in Violation of Public Policy Claim Is Without Merit ........................................................ 18
          1.   Plaintiff cannot establish a prima facie case of wrongful termination in violation of public policy ................. 18

1

## TABLE OF CONTENTS
### (continued)

Page

a.  Plaintiff fails to provide any specific statutory or constitutional provision on which her claim is based .......................................................................... 18

b.  Even if Plaintiff's termination violated an important public policy, she admitted it would not have been a motivating reason for her termination ...................... 19

2.  KnowledgeStorm terminated Plaintiff's employment for legitimate, business reasons ....................................................... 20

V.  CONCLUSION ........................................................................... 20

Ford & Harrison
LLP
Attorneys At Law
Los Angeles

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...........................................................................7

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...........................................................................7

Harper v. Wallingford,
    877 F.2d 728 (9th Cir. 1989) ..............................................................7

Martinez v. Marin Sanitary Service,
    349 F. Supp. 2d 1234 (N.D. Cal. 2004)........................................ 8, 11

McDonnell Douglas Corporation v. Green,
    411 U.S. 792 (1973)..........................................................................16

Vasquez v. County of Los Angeles,
    349 F.3d 634 (9th Cir. 2001) ............................................................11

## STATE CASES

Aguilar v. Avis Rent A Car System, Inc.,
    21 Cal.4th 121 (1999) ............................................................ 8, 10, 11

Beyda v. City of Los Angeles,
    65 Cal.App.4th 511 (1998) .................................................... 9, 10, 11

Etter v. Veriflo Corp.,
    67 Cal. App. 4th 457 (1998) ............................................................. 10

Fisher v. San Pedro Peninsula Hospital,
    214 Cal.App.3d 590 (1989) ......................................................... 7, 11

Foley v. Interactive Data Corp.,
    47 Cal.3d 654 (1988) ....................................................................... 18

Green Ralee Eng. Co.,
    19 Cal. 4th 66 (1998) ................................................................. 18, 19

Guthrey v. State of California,
    63 Cal. App. 4th 1108 (1998) ....................................................... 7, 18

Guz v. Bechtel National Inc.,
    24 Cal. 4th 317 (2000) ..................................................................... 16

Horn v. Cushman & Wakefield Western, Inc.,
    72 Cal.App.4th 798 (1999) .................................................................9

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                          - iii -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

# TABLE OF AUTHORITIES
## (continued)

Page

Jones v. Department of Corrections and Rehabilitation,
    152 Cal. App. 4th 1367 (2007) ................................................................ 10

King v. United Parcel Service, Inc.,
    152 Cal. App. 4th 426 (2007) .................................................................. 17

Loggins v. Kaiser Permanente International,
    151 Cal. App. 4th 1102 (2007) ................................................................ 18

Lyle v. Warner Brothers Television Products,
    38 Cal. 4th 264 (2006) ........................................................................ 8, 11

Miller v. Department of Corrections,
    (2005) 36 Cal.4th 446 .......................................................................... 16, 17

State Department of Health Services v. Superior Court,
    31 Cal. 4th 1026 (2003) ......................................................................... 14

Tameny v. Atlantic Richfield,
    27 Cal. 3d 167 (1980) ............................................................................. 18

Turner v. Anheuser-Busch, Inc.,
    7 Cal. 4th 1238 (1994) ....................................................................... 18, 19

West v. Bechtel Corp.,
    96 Cal. App. 4th 966 (2002) ....................................................................9

Yanowitz v. L'Oreal USA, Inc.,
    36 Cal. 4th 1028 (2005) ...................................................................... 16, 17

## STATE STATUTES

Cal. Code Regs., tit. 2, § 7287.6(b)(1)(A) ....................................................8

Cal. Code Regs., tit. 2, § 7287.8(a)(1)(C) .................................................. 16

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2

- iv -

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3    Plaintiff Jasbir Gill ("Kedkad"), who is of Indian origin, asserts claims for

4 racial harassment and retaliation in violation of the California Fair Employment and

5 Housing Act (FEHA), and wrongful termination in violation of public policy

6 against her former employer, against defendant KnowledgeStorm, Inc.

7 ("KnowledgeStorm").

8    Gill worked as a sales executive out of the company's South San Francisco

9 office for approximately five months.  During her employment, Gill alleges her

10 supervisor, Joe Brown, who worked out of the company's Atlanta office, verbally

11 harassed her during his periodic sales visits.  However, the conduct of which Gill

12 complains does not rise to the level of unlawful harassment under the FEHA.  Also,

13 Gill never properly reported the harassment pursuant to the company's formal No-

14 Harassment policy.

15    On April 11, 2007, while at the South San Francisco office, Gill printed three

16 copies of her resume, using company time and resources.  KnowledgeStorm

17 subsequently terminated Gill's employment with the company, effective April 13,

18 2007.  Gill contends that her termination was a result of her reporting harassment

19 and refusing to engage in unlawful activities.  However, the evidence does not

20 support her contrived allegations.  Even taking her allegations in the light most

21 favorable to her, Gill's claims fail as a matter of law.

22 **II.    STATEMENT OF FACTS**

23    **A.    The Parties and Witnesses**

24    Gill is of Indian ancestral origin, but was born in Canada.  (Fact 1.)

25    KnowledgeStorm was a company that provided search resources for

26 technology solutions and information.  (Fact 2.)  It gave technology vendors

27 opportunities to reach business and technology professionals as they conducted

28 research online and gave contact information that converted them into web leads.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                -1-                DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1    (Fact 3.)

2         Kelly Gay was the chief executive office and president of KnowledgeStorm.

3    (Fact 4.)  Mike Ewers was its vice president of finance and human resources.  (Fact

4    5.)  Jim Canfield was its vice president of sales.  (Fact 6.)  Jason Hoback was its

5    director of sales, reporting to Canfield.  (Fact 7.)  Joe Brown was its western

6    regional sales manager, reporting to Hoback. (Fact 8.)

7         Joseph Niederberger, Lisa McGuire, Katie Kimball, Rachel Gordon, and co-

8    plaintiff Mahmoud Kedkad were sales executives of KnowledgeStorm and

9    coworkers of Gill. (Fact 9.)

10   **B.**    **Gill's Employment with KnowledgeStorm**

11        In early October 2006, Gill interviewed with several employees of

12   KnowledgeStorm at its headquarters in Atlanta, Georgia.  (Fact 10.)  In October

13   2006, Brown offered Gill a sales executive position with the company.  (Fact 11.)

14   Gill accepted the offer.  (Fact 12.)  KnowledgeStorm also agreed to pay Gill's

15   business visa fees -- estimated by Gill to be approximately $4,000 -- in order for

16   Gill to continue working in the United States.  (Fact 13.)  Gill began working for

17   KnowledgeStorm in November 2006.  (Fact 14.)

18        Gill worked out of KnowledgeStorm's South San Francisco office.  (Fact

19   15.)  There were approximately eight employees working in cubicles in this office.

20   (Fact 16.)  Gill was "more close" with two of her co-workers, Ms. Kimball and Ms.

21   McGuire.  (Fact 17.)

22        Gill reported directly to Brown.  (Fact 18.)  However, Brown did not work

23   out of the South Francisco office.  (Fact 19.)  He worked out of the Atlanta office,

24   and traveled to the South San Francisco office once every two or three weeks.

25   (Fact 20.)

26   **C.**    **KnowledgeStorm's No-Harassment Policy**

27        Prior to commencing work, Gill attended a four-day training in Atlanta

28   office.  (Fact 21.)  KnowledgeStorm held a presentation at the training on its

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                    - 2 -                    DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1   employment policies and procedures, including its No-Harassment policy.  (Fact
2   22.)  Before or at the training, Gill received KnowledgeStorm's employee
3   handbook ("Handbook").  (Fact 23.)  Gill acknowledged receiving, reading and
4   understanding the Handbook.  (Fact 24.)  The Handbook included a No-Harassment
5   policy that required an employee who "is being harassed . . . or believes his/her
6   employment is being adversely affected by such conduct" to "immediately report
7   their concerns to" either "Mike Ewers, Vice-President" or "Kelly Gay, CEO."  (Fact
8   25.)

9          **D.    Alleged Harassment by Joe Brown**

10                **1.    *Alleged statements witnessed by Gill***

11         Gill claims Brown harassed her because of her race.  (Compl., ¶¶ 5-22.)
12   During the first week of January 2007, Gill asked Brown to review an email that
13   she was writing to a client.  (Fact 26.)  While Brown was reviewing the email, he
14   allegedly said to Gill, "Well, that's what they teach you in India? You need to learn
15   the right way, which is the white man's way."  (Fact 27.)  Brown then shrugged his
16   shoulders and walked away.  (Fact 28.)  Gill "didn't know what to make of [the
17   remark]."  (Fact 29.)

18         During the second week of January 2007, Brown and Gill allegedly were
19   talking about the sales industry, and "certain sales aspects of how Indians [sic] and
20   what kinds of jobs Indians are doing here."  (Fact 30.)  In that context, Brown
21   allegedly said, "Non-whites have a very difficult time in sales and they should just
22   pack up their bags and leave."[1]  (Fact 31.)

23         During the last week of March 2007, Brown and Gill allegedly were talking
24   about Google, and how there are "lots and lots of Indians" working there.  (Fact

26   [1]   Gill never identified this alleged remark in her complaint, mandatory
27   disclosures, or in her responses to KnowledgeStorm's interrogatories.  Apparently,
      it was newly-contrived at her deposition.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                                - 3 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                                  JUDGMENT AGAINST PLAINTIFF GILL

1    32.)  In that context, Brown allegedly said that "oh, they're all just developers

2    sitting doing menial jobs and developing codes."  (Fact 33.)  Gill allegedly

3    responded, "I don't know which world you are living in. Lots of Indians here are

4    VPs and CEOs."  (Fact 34.)

5         Around the same time, during the last week of March 2007, Brown and Gill

6    were discussing the economy, and Brown allegedly asked Gill what her thoughts

7    were on the war in Iraq.  (Fact 35.)  Gill allegedly responded that "this is not a time

8    and place for us to discuss my idea or my views on the war in Iraq."  Brown

9    allegedly then said, "Oh, well, I don't care, I hate Muslims, I think all Muslims are

10   terrorists anyway."  (Fact 36.)  Gill is not a Muslim; rather, she is a Sikh.  (Fact 37.)

11              **2.    *Alleged statements never witnessed by Gill***

12        While Gill was in India, Brown allegedly told co-plaintiff Kedkad that "he

13   didn't like Indians because they were taking all the jobs in the bay area so it's good,

14   maybe [Gill will] stay [in India]."[2] (Fact 38.)  Co-plaintiff Kedkad allegedly told

15   Gill this remark at the end of March 2007, a few weeks after she returned from her

16   trip to India.  (Fact 39.)

17        **E.    Gill's Trip to India and Relationship with Brown**

18        Gill traveled to India from February 9 to March 5, 2007.  (Fact 40.)  Brown

19   permitted Gill to go to India to visit her mother even though she had been employed

20   for approximately three months, and she had not earned enough vacation to cover

21   her trip.  (Fact 41.)  Gill sent Brown pictures of her trip to India from her personal

22   e-mail account.  (Fact 42.) She also brought back Brown wind chimes from her trip.

23   (Fact 43.)  When asked why she brought Brown back wind chimes in March 2007

24   when he allegedly had already begun "systematic racial harassment" against her,

25   Gill responded, "At this time [that she returned from her trip in March 2007], I did

26   not classify it as racial discrimination."  (Fact 44.)

27

28   [2]    This was also a newly contrived comment at her deposition.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                              - 4 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                                JUDGMENT AGAINST PLAINTIFF GILL

1    Gill claims that Brown did not support her in the job and gave her other

2    coworkers client leads.  (Fact 45.)  However, Gill's coworker, McGuire, testified

3    that "no sales executive was given leads" (i.e., equal treatment among all sales

4    executives).  (Fact 46.)

5    In addition, the undisputed evidence establishes that Brown routinely

6    supported Gill as an employee.  Indeed, Brown gave Gill the ISV program (a

7    program providing her with leads based on KnowledgeStorm's relationship with

8    IBM) to the exclusion of every other west coast salesperson.  (Fact 47.)  Likewise,

9    an email from Brown to all of the company's sales employees congratulating Gill

10   on her first sale states: "Great job Jasbir!  Your hard work is evident by your peers

11   and we know you will be very successful."  (Fact 48.)  Gill "thank[ed] Joe Brown

12   for his patience and support throughout this deal . . . ."  (Fact 49.)  Gill referred to

13   Brown as "Yoda Brown" because of his "wisdom."  (Fact 50.)

14   Finally, Brown communicated his appreciation and respect for Gill in an e-

15   mail *just one week* before she was terminated:  "You are someone I admire greatly

16   and want to help be successful here.  Where you feel that I am lacking or when you

17   feel that you need more from me or KnowledgeStorm, I want you to ask.  I may not

18   be able to accommodate specific requests, but I will always make the time to listen

19   and try."  (Fact 51.)

20   **F.    Gill's Failure To Report Harassment**

21   Gill allegedly told Hoback of the two January statements in person during the

22   last week of January 2007.  (Fact 52.)  She allegedly told Hoback about the "I don't

23   like Indians" remark in late March 2007.  (Fact 53).  Gill allegedly told Hoback

24   about the "I hate Muslims" and "Indians doing menial jobs" remarks on April 3,

25   2007.  (Fact 54.)

26   Gill never reported any of these alleged remarks in writing.  (Fact 55.)  She

27   also never reported any of these alleged remarks to Ewers or Gay.  (Fact 56.)  Like

28   Ewers and Gay, Hoback also worked out of the Atlanta office.  Hoback visited the

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                    - 5 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                       JUDGMENT AGAINST PLAINTIFF GILL

1  South San Francisco office, on average, one time per month.  (Fact 57.)

2       Gill never discussed these alleged remarks with Brown.  (Fact 58.)  She did

3  not discuss these alleged remarks with the two coworkers with whom she was

4  "more close," McGuire and Kimball.  (Fact 59.)  The only co-worker Gill allegedly

5  told about these remarks was co-Plaintiff Kedkad.  (Fact 60.)

6       **G.    Gill's Termination of Employment**

7       On the evening of April 11, 2007, while at the South San Francisco office,

8  Gill printed three copies of her resume.  (Fact 61.)  Instead of printing out in the

9  South San Francisco office, the resumes printed in the Atlanta office.  (Fact 62.)

10  The following day, on April 12, 2007, Hoback called Gill, along with Brown.  (Fact

11  63.)  Hoback allegedly advised Gill that she was being terminated effective April

12  13th because she had violated company policy.[3]  (Fact 64.)

13       KnowledgeStorm has never treated any other employee more favorably, i.e.,

14  it has never disciplined less severely an employee of which it was aware that used

15  company time and equipment to prepare/print out her resume.  (Fact 65.)

16       Gill now claims KnowledgeStorm terminated her employment "because [she]

17  brought the racial comments [allegedly to the attention of Hoback]."  (Fact 66.)

18  She also claims that KnowledgeStorm demanded her to commit "fraudulent acts

19  including falsifying start dates and inflating proposals in an effort to defraud

20  potential buyers" of the company."  (Complaint, ¶¶19, 34.)  However, she

21  admittedly neither engaged in any such alleged activity nor told anyone in

22  management that she refused to do so.  (Fact 67.)  Gill also admitted her alleged

23  refusal to engage in fraudulent acts played "little part" in her termination.  (Fact

24  68.)  Her complaint does not cite to any statute or constitutional provision on which

---

25  [3]    Moreover, after KnowledgeStorm terminated Gill, it discovered evidence

26  suggesting that Gill, along with co-plaintiff Kedkad, had been using company time

27  and equipment to develop their own business, Content Maximizers
   (www.contentmaximizers.com).  (McGuire Dec., ¶4; Gill Depo., pp. 132:17-

28  134:12).

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                     - 6 -                  DEFENDANT'S MOTION FOR SUMMARY
                                                      JUDGMENT AGAINST PLAINTIFF GILL

1 │ this claim is based.  (Complaint, ¶¶ 33-37.)

2 │ **III.   SUMMARY JUDGMENT STANDARD**

3 │     The moving party must demonstrate that no genuine issue of material fact

4 │ exists for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). However, the

5 │ moving party is not required to negate those portions of the nonmoving party's

6 │ claim on which the nonmoving party bears the burden of proof.  <u>Id</u>.  Once the

7 │ moving party demonstrates that there is no genuine issue of material fact, the

8 │ nonmoving party must designate "specific facts showing that there is a genuine

9 │ issue for trial." <u>Id</u>. at 324. The nonmoving party must "make a showing sufficient to

10 │ establish the existence of an element essential to that party's case, and on which that

11 │ party will bear the burden of proof at trial." <u>Id</u>. at 322.

12 │     Plaintiff's bald assertion that a genuine issue of material fact exists does not

13 │ preclude summary judgment.  <u>Harper v. Wallingford</u>, 877 F.2d 728 (9th Cir. 1989).

14 │ The mere existence of alleged factual disputes cannot defeat an otherwise properly

15 │ supported motion.  Rather, the factual dispute or disputes must be material.

16 │ <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986).

17 │ **IV.   ARGUMENT**

18 │     **A.   Plaintiff's Racial Harassment Claim Is Without Merit**

19 │     Under the FEHA, it is an unlawful employment practice "[f]or an

20 │ employer…or any other person, because of race…to harass an employee…"  Cal.

21 │ Gov. Code, § 12940(j)(1).

22 │     To establish a prima facie claim of racial harassment, an employee must

23 │ show that: (1) she belongs to a protected group; (2) she was subjected to

24 │ unwelcome harassment; (3) the harassment was based upon her race; (4) the

25 │ harassment was sufficiently severe or pervasive so as to alter the conditions of

26 │ employment and create an abusive working environment; and (5) respondeat

27 │ superior. <u>Guthrey v. State of California</u>, 63 Cal.App.4th 1108, 1122-1123 (1998);

28 │ <u>Fisher v. San Pedro Peninsula Hospital</u>, 214 Cal.App.3d 590, 608 (1989).

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                          - 7 -                    DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1.   **Plaintiff cannot establish a prima facie claim of racial harassment against KnowledgeStorm**

   a.   <u>The conduct complained of by Plaintiff was not "because of" her race</u>

The FEHA does not prohibit all harassment in the workplace; it is directed at unlawful harassment "because of race." Cal. Gov. Code, § 12940(j)(1); <u>Aguilar v. Avis Rent A Car System, Inc.</u>, 21 Cal.4th 121, 129-131 (1999). "[I]t is the disparate treatment of an employee on the basis of [race] – not the mere discussion of [race]… – that is the essence of a [racial] harassment claim." <u>Lyle v. Warner Bros. Television Prods.</u>, 38 Cal.4th 264, 279-282 (2006) [harassment because of sex].

Here, the conduct complained of by Gill was not *because of* her race. With regard to the "teaching in India," "non-whites in sales," "Indians at Google," and "Muslims are terrorists" remarks, there is no admissible evidence that Brown made them on the basis of *Gill's race*. As in <u>Lyle</u>, these alleged remarks appeared to be mere *discussion of race* as social commentary about specific issues that Brown and Gill were discussing at time Brown made them. They certainly did not amount to racial epithets, derogatory comments or slurs. Cal. Code Regs., tit. 2, § 7287.6(b)(1)(A). Rather, they appeared to be offhand comments. This is supported by the admissible evidence suggesting Brown and Gill had a professional and, perhaps friendly, working relationship, as discussed below under the "severe or pervasive" subsection.

With regard to the alleged "maybe Gill will stay in India" remark, it is inadmissible hearsay. Gill admittedly never witnessed Brown making this remark. Indeed, it was communicated to Gill through co-plaintiff Kedkad (e.g., double hearsay). As Gill cannot rely upon inadmissible hearsay or workplace gossip to establish an unlawful hostile work environment, this alleged remark is irrelevant to this analysis and cannot be considered by the court. <u>Martinez v. Marin Sanitary</u>

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                                    - 8 -                     DEFENDANT'S MOTION FOR SUMMARY
                                                                        JUDGMENT AGAINST PLAINTIFF GILL

1  <u>Service</u>, 349 F. Supp.2d 1234, 1248 (N.D. Cal. 2004) [holding "[i]ncidents of

2  harassment predicated on inadmissible hearsay are not proper for the court to

3  consider in evaluating the hostility of [the plaintiff's] workplace"]; <u>Beyda v. City</u>

4  <u>of Los Angeles</u>, 65 Cal.App.4th 511, 521 (1998) [holding "mere workplace gossip

5  is not a substitute for proof. Evidence of harassment of others, and of a plaintiff's

6  awareness of that harassment, is subject to the limitations of the hearsay rule"].

7         The same actor presumption, which is applied in employment discrimination

8  cases, further demonstrates that the conduct complained of by Gill was not *because*

9  *of* her race.  In California, it is well established that "'[w]here the same actor is

10 responsible for both the hiring and the firing of a discrimination plaintiff, and both

11 actions occur within a short period of time,[4] a strong inference arises that there was

12 no discriminatory motive.'" <u>Horn v. Cushman & Wakefield Western, Inc.</u>, 72

13 Cal.App.4th 798, 809 (1999) (citations omitted); <u>West</u>, 96 Cal.App.4th at 980-981.

14        Under the instant facts, Brown is both the person who made the decision to

15 hire Gill and the person who allegedly harassed her during her approximate five-

16 month employment.  As such, if Brown had a discriminatory animus against

17 Indians, "'[i]t hardly makes sense to hire workers from a group one dislikes

18 (thereby incurring the psychological costs of associating with them), only to fire [or

19 harass] them once they are on the job.'" <u>Horn</u>, 72 Cal.App.4th at 809 (emphasis

20 added) (citations omitted); <u>West</u>, 96 Cal.App.4th at 980-81.  If true, it also hardly

21 makes sense that Brown would openly praise Gill on her sales efforts, underscore

22 his commitment to her success only days before her termination, permit her to visit

23 her mother in India for three weeks when she had only been employed at the

24

25 [4]     While the passage of time eventually attenuates this same actor presumption,
   the California courts have held the presumption to last for years.  <u>Horn</u>, 72
26 Cal.App.4th at 809, fn. 7 [holding "five years is relatively short time and is not so
   long a time as to attenuate the presumption"]; <u>West v. Bechtel Corp.</u>, 96
27 Cal.App.4th 966, 981 (2002) [applying the presumption with "particular force"
   where the employer fired the employee just after a month of employment].
28

1    company for three months, and readily accept pictures and a gift from Gill.

2        Thus, there is no evidence to satisfy this element of Gill's racial harassment

3    claim as a matter of law.

4                   **b.**      **The conduct complained of by Plaintiff was not**

5                            **"sufficiently severe or pervasive" to alter the**

6                            **conditions of employment and create an abusive**

7                            **working environment**

8        Assuming *arguendo* Brown's remarks, if believed, were because of race, Gill

9    cannot establish that the complained-of conduct was sufficiently severe or

10   pervasive to alter the conditions of employment and create an abusive working

11   environment.

12       To show an unlawful hostile work environment exists, the employee must

13   show that she was subjected to comments which are sufficiently severe or pervasive

14   so as to alter the conditions of employment and create an abusive working

15   environment.  Aguilar, 21 Cal.4th at 130-131.  "The requirement that the conduct

16   be sufficiently severe or pervasive to create a working environment a reasonable

17   person would find hostile or abusive is a crucial limitation that prevents [racial]

18   harassment law from being expanded into a 'general civility code.'"  Jones v.

19   Department of Corrections and Rehabilitation, 152 Cal.App.4th 1367, 1377 (2007)

20   (citation omitted).

21       The employee must meet both an objective and subjective standard,

22   including whether a "reasonable person" would find the conduct offensive.  Beyda,

23   65 Cal.App.4th at 518.  The "totality of the circumstances" must be analyzed.  The

24   factors include: (1) the frequency of the conduct; (2) the severity of the conduct; (3)

25   whether the conduct was physically threatening or humiliating or whether it was a

26   mere offensive utterance; and (4) whether the conduct unreasonably interfered with

27   plaintiff's work performance.  Etter v. Veriflo Corp., 67 Cal.App.4th 457, 466

28   (1998).

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                    - 10 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                        JUDGMENT AGAINST PLAINTIFF GILL

1    An employee cannot recover for harassment that is "occasional, isolated,

2    sporadic, or trivial; rather, the employee must show a concerted pattern of

3    harassment of a repeated, routine, or a generalized nature." <u>Lyle</u>, 38 Cal.4th at 283;

4    <u>Aguilar</u>, 21 Cal.4th at 131; <u>Fisher</u>, 214 Cal. App. 3d at 610.  That is, when the

5    harassing conduct is not severe in the extreme, more than a few isolated incidents

6    must have occurred to prove a claim based on working conditions.  <u>Lyle</u>, 38 Cal.4th

7    at 283; <u>Martinez</u>, 349 F. Supp.2d at 1252 [stating "evidence of only a few specific

8    racially-charged incidents is usually insufficient to support a claim for an

9    objectively unreasonable hostile work environment"]; <u>Vasquez v. County of Los</u>

10    <u>Angeles</u>, 349 F.3d 634, 642-643 (9th Cir. 2001) [holding that, although plaintiff

11    claimed that he was continually harassed, he provided specific factual allegations

12    regarding only a few discrete incidents, which were insufficient].

13    Here, there is no evidence that a "concerted pattern of harassment of a

14    repeated, routine, or a generalized nature" existed in the South San Francisco office.

15    First, Brown's alleged remarks were infrequent.  Brown did not even work out of

16    that office.  He worked out of the Atlanta office, and traveled to the South San

17    Francisco office once every two or three weeks.  Gill only alleges that the racially

18    harassing conduct occurred when Brown visited the South San Francisco office.

19    Yet, she was in India and not in the office for three weeks of her five-month

20    employment.

21    Gill witnessed Brown allegedly make only four remarks that she attributes or

22    connects to her race over her five-month employment.[5]  Brown made the alleged

23    "teaching in India" remark during the first week of January 2007, which was

24    roughly 60 days after Gill began her employment.  Approximately a week later,

25    Brown made the alleged "non-whites in sales" remark during the second week of

26    _____

27    [5]    As Gill never witnessed the alleged "maybe Gill will stay in India" remark, it
      is irrelevant to this analysis as well. <u>Martinez</u>, 349 F. Supp.2d at 1248; <u>Beyda</u>, 65

28    Cal.App.4th at 521.

1    January 2007. Then, over 60 days later, Brown made the alleged "Indians at

2    Google" remark during the last week of March 2007. Around the same time,

3    Brown made the alleged "Muslims are terrorists" remark during the last week of

4    March 2007. Brown's alleged remarks were plainly "occasional" or "sporadic."

5        Second, Brown's alleged racial remarks were not severe. They appeared to

6    be mere *discussion of race* as social commentary about specific issues that Brown

7    and Gill were discussing at time Brown made them. With regard to the teaching in

8    India" remark, Brown allegedly made it while he was reviewing an email that Gill

9    was writing to a client. Gill "didn't know what to make of [the remark]." Next,

10   with regard to the "non-whites in sales" remark, Brown allegedly made it while

11   they were openly talking about the sales industry, and "certain sales aspects of how

12   Indians and what kinds of jobs Indians are doing here." Further, with regard to the

13   "Indians at Google" remark, Brown allegedly made it while they were openly

14   talking about Google, and how there are "lots and lots of Indians" working there.

15   Gill allegedly responded, "I don't know which world you are living in. Lots of

16   Indians here are VPs and CEOs." Lastly, with regard to the "Muslims are

17   terrorists" remark, Brown allegedly made it after he suddenly asked her what her

18   thoughts were on the war in Iraq during their discussion on the economy. It is not

19   based on her race, as Gill is of Canadian and Indian National Origin. In terms of

20   her religion, which is not at issue in this case, Gill is not a Muslim; rather, she is a

21   Sikh. None of these remarks involved vulgar language or seemed to have been

22   made in anger. Although these remarks might have engendered offensive feelings

23   in Gill, she waited roughly two weeks to report them to Hoback. Brown's alleged

24   remarks amounted to nothing more than "offhand comments" and "isolated

25   incidents."

26       Third, there is no evidence that the alleged racial remark were in any way

27   physically threatening. At best, they were mere offensive utterances. However,

28   there is no evidence that the alleged remarks were made in the presence of or

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                    - 12 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                        JUDGMENT AGAINST PLAINTIFF GILL

1   overheard by any of Gill's coworkers.  Apparently, Brown only uttered the alleged

2   remarks during one-on-one conversations with Gill.

3          Fourth, there is no admissible evidence that Brown's alleged racial remarks

4   unreasonably interfered with Gill's work performance.  Brown and Gill appeared to

5   have a professional and, perhaps friendly, working relationship.  Brown openly

6   praised Gill for her sales efforts at the company.  In December 2006, Brown sent an

7   e-mail to all of the company's sales employees congratulating Gill on her first sale:

8   "Great job Jasbir!  Your hard work is evident by your peers and we know you will

9   be very successful." Gill "thank[ed] Joe Brown for his patience and support

10  throughout this deal . . . ." Gill even jokingly referred to Brown as "Yoda Brown"

11  because of his "wisdom."

12         During the time period in which Brown allegedly made these alleged racial

13  remarks, he permitted Gill to go on a three-week trip to India, to visit her mother,

14  even though she had only been employed for about three months and had not

15  accrued the requisite vacation.  Gill even sent Brown pictures of trip and brought

16  him back wind chimes.  When asked why she brought Brown back wind chimes *in*

17  *March 2007*, when he allegedly had already begun "systematic racial harassment"

18  against her, Gill responded, "At this time [that she returned from her trip in March

19  2007], I did **not** classify it as racial discrimination."  (Emphasis added.)

20         Thus, there is also no evidence to satisfy this element of Gill's racial

21  harassment claim as a matter of law.

22         **2.      Plaintiff could have avoided any alleged harassment if she**

23                 **had complied with KnowledgeStorm's complaint procedures**

24                 **under its No-Harassment policy**

25         Under the FEHA, an employer is strictly liable for all acts of unlawful

26  harassment by a supervisor.  "But strict liability is not absolute liability in the sense

27  that it precludes all defenses.  Even under a strict liability standard, a plaintiff's own

28  conduct may limit the amount of damages recoverable or bar recovery entirely."

Ford & Harrison
LLP
Attorneys At Law
Los Angeles

LA:66314.2                                  - 13 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                                     JUDGMENT AGAINST PLAINTIFF GILL

1    <u>State Dept. of Health Services v. Superior Court</u>, 31 Cal.4th 1026, 1042 (2003)

2    [("<u>McGinnis</u>")].

3        In an action under the FEHA against an employer for hostile environment

4    racial harassment by a supervisor, an employer may plead and prove a defense

5    based on the "avoidable consequences doctrine." <u>McGinnis</u>, 31 Cal.4th at 1044.

6    To establish a defense under this doctrine, an employer must show that: "(1) the

7    employer took reasonable steps to prevent and correct workplace [racial]

8    harassment; (2) the employee unreasonably failed to use the preventive and

9    corrective measures that the employer provided; and (3) reasonable use of the

10   employer's procedures would have prevented at least some of the harm that the

11   employee suffered." <u>Id</u>.

12       "If the employer establishes that the employee, by taking reasonable steps to

13   utilize employer-provided complaint procedures, could have caused the harassing

14   conduct to cease, the employer will nonetheless remain liable for any compensable

15   harm the employee suffered before the time at which the harassment would have

16   ceased, and the employer avoids liability only for the harm the employee incurred

17   thereafter." <u>McGinnis</u>, 31 Cal.4th at 1045.

18       Here, Gill could have avoided any alleged harassment if she had complied

19   with KnowledgeStorm's No-Harassment policy.  First, KnowledgeStorm took

20   reasonable steps to prevent and correct all forms of workplace harassment.  In its

21   Handbook, the company had a No-Harassment policy that required an employee

22   who "is being harassed . . . or believes his/her employment is being adversely

23   affected by such conduct" to "immediately report their concerns to" either "Mike

24   Ewers, Vice-President" or "Kelly Gay, CEO."  Upon hire, Gill received a copy of

25   the Handbook and even attended a training in the Atlanta office during which the

26   company held a presentation on its employment policies and procedures, including

27   its No-Harassment policy.

28

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2

- 14 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1    Second, Gill unreasonably failed to use the preventive and corrective

2    measures that KnowledgeStorm provided in its No-Harassment policy. Gill neither

3    reported any of Brown's alleged racial remarks to Ewers or Gay, nor reported any

4    of them in writing. Rather, she allegedly verbally reported the alleged harassment

5    to Hoback, and in a dilatory fashion. Gill waited roughly two weeks to report the

6    alleged "teaching in India" and "non-whites in sales" remarks to Hoback at the end

7    of January 2007. Likewise, she waited roughly two weeks to report the alleged

8    "Indians at Google" and "Muslims are terrorists" remarks to Hoback on April 3,

9    2007. Certainly, Gill should have reported these alleged racial remarks

10   immediately to Ewers or Gay when she believed Hoback was not taking any

11   corrective action. Gill even acknowledges that she *did not* consider the alleged

12   remarks to be harassment as late as March 2007, at the time she returned from her

13   trip to India.

14    Lastly, Gill's reasonable use of the KnowledgeStorm's No-Harassment

15   policy would have prevented all, or at the very least some, of the harm that Gill

16   allegedly suffered. Gill never reported any of Brown's alleged racial remarks to

17   Ewers or Gay. KnowledgeStorm did not even learn of the alleged harassment until

18   well after the company terminated her employment. If Gill had used the company's

19   formal complaint procedures, it would have commenced an immediate investigation

20   into the allegations.

21    Thus, KnowledgeStorm should not be liable for any of the harm that Gill

22   allegedly suffered.

23    **B.    Plaintiff's Retaliation Claim Is Without Merit**

24    It is an unlawful employment practice for an employer "to discharge, expel,

25   or otherwise discriminate against any person because the person has opposed any

26   practices forbidden under [the FEHA] or because the person has filed a complaint,

27   testified, or assisted in any proceeding under [the FEHA]." Cal. Gov. Code, §

28   12940, subd. (h).

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                    - 15 -                    DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1     In California, the courts have adopted the three-stage burden-shifting test

2  established by the United States Supreme Court in <u>McDonnell Douglas Corporation</u>

3  <u>v. Green</u>, 411 U.S. 792 (1973), when analyzing an employer's motion for summary

4  judgment against a claim of prohibited retaliation.  <u>Yanowitz v. L'Oreal USA, Inc.</u>,

5  36 Cal.4th 1028, 1042 (2005).  Under the <u>McDonnell Douglas</u> test, the plaintiff

6  must establish a prima facie case of retaliation.  If the plaintiff is successful, the

7  employer must offer a legitimate, non-retaliatory reason for its action.  If the

8  employer produces evidence on that point, the plaintiff must show that employer's

9  reason was a pretext for retaliation.  <u>Guz v. Bechtel National Inc.</u>, 24 Cal.4th 317,

10  354 (2000).

11     **1.     Plaintiff cannot establish a prima facie case of retaliation**

12            **because she did not engage in "protected activity" by**

13            **reporting conduct that she did not "reasonably and in good**

14            **faith" believe to be unlawful racial harassment**

15     To establish a prima facie claim of retaliation, an employee must show: (1)

16  she engaged in a "protected activity," (2) the employer subjected the employee to

17  an adverse employment action, and (3) a causal link existed between the protected

18  activity and the employer's action.  <u>Yanowitz</u>, 36 Cal.4th at 1042.

19     Under certain circumstances, a retaliation claim may be brought by an

20  employee who has complained of or opposed conduct, even when a court or jury

21  subsequently determines the conduct actually was not prohibited by the FEHA.

22  <u>Yanowitz</u>, 36 Cal.4th at 1043.  However, the employee is only protected against

23  retaliation "if the employee reasonably and in good faith believed that what he or

24  she was opposing constituted unlawful employer conduct such as [racial]

25  harassment or [racial] discrimination."  <u>Miller v. Dept. of Corrections</u>, 36 Cal.4th

26  446, 473-74 (2005); Cal. Code Regs., tit. 2, § 7287.8(a)(1)(C) ["[o]pposing

27  employment practices which an individual reasonably believes to exist and believes

28  to be a violation of the Act"].  When the employee cannot establish he had such a

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                                    - 16 -                DEFENDANT'S MOTION FOR SUMMARY
                                                                    JUDGMENT AGAINST PLAINTIFF GILL

1    reasonable and good faith belief, he cannot prevail on a claim of retaliation.

2    <u>Yanowitz</u>, 36 Cal.4th at 1046-47; <u>Miller</u>, 36 Cal.4th at 473-74.

3         Here, Gill did not "reasonably and in good faith" believe she was subjected

4    to unlawful harassment because of her race. As discussed more fully above under

5    the section analyzing Gill's racial harassment claim, there is no admissible evidence

6    that Brown made the "teaching in India," "non-whites in sales," "Indians at

7    Google," and "Muslims are terrorists" remarks on the basis of Gill's race. Even if

8    the alleged remarks were because of race, Gill cannot establish that they were

9    sufficiently severe or pervasive to alter the conditions of her employment and create

10   an abusive working environment. KnowledgeStorm incorporates those arguments

11   herein by reference. <u>See</u> Section IV.A.1. Thus, Gill did not engage in "protected

12   activity" by reporting conduct to Hoback that she did not "reasonably and in good

13   faith" believe to be unlawful racial harassment.

### 2.    KnowledgeStorm terminated Plaintiff's employment for legitimate, nonretaliatory reasons

16        Assuming *arguendo* Gill can establish a prima facie case of retaliation, "the

17   employer is required to offer a legitimate, nonretaliatory reason for the adverse

18   employment action." <u>Yanowitz</u>, 36 Cal.4th at 1042.

19        Here, KnowledgeStorm terminated Plaintiff's employment for legitimate,

20   nonretaliatory reasons. On the evening of April 11, 2007, while at the South San

21   Francisco office, Gill printed three copies of her resume. Instead of printing out in

22   the South San Francisco office, the resumes printed in the Atlanta office. The

23   resumes were discovered the next day on April 12, 2007. Gill was apparently

24   searching for other employment using company-owned equipment and materials

25   during work hours. KnowledgeStorm subsequently terminated Gill's employment

26   for violating company policy, effective April 13, 2007.

27        Gill cannot proffer "specific and substantial" evidence of pretext to overcome

28   the legitimate reasons put forth by KnowledgeStorm. <u>King v. United Parcel</u>

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2
- 17 -
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1   Service, Inc., 152 Cal.App.4th 426, 433 (2007). Indeed, Gill admittedly printed the

2   resumes during company time and with company resources. As Gill cannot rebut

3   this burden, her retaliation claim must fail as a matter of law.

4           **C.    Plaintiff's Wrongful Termination in Violation of Public Policy**

5                   **Claim Is Without Merit**

6           An employer cannot discharge an employee in violation of a California

7   public policy. Foley v. Interactive Data Corp., 47 Cal.3d 654, 665 (1988). This

8   gives rise to a tort claim for wrongful termination in violation of public policy.

9   Tameny v. Atlantic Richfield, 27 Cal.3d 167, 172 (1980). California courts have

10  also adopted the McDonnell Douglas test when analyzing an employer's motion for

11  summary judgment against a wrongful termination claim. Loggins v. Kaiser

12  Permanente International, 151 Cal.App.4th 1102, 1108-1109 (2007).

13          **1.    Plaintiff cannot establish a prima facie case of wrongful**

14                  **termination in violation of public policy**

15          To establish a prima facie case, an employee must show: (1) she engaged in a

16  "protected activity;" (2) the employer subjected the employee to an adverse

17  employment action; and (3) a causal link existed between the protected activity and

18  the employer's action. Guthrey, 63 Cal.App.4th at 1125.

19          **a.     Plaintiff fails to provide any specific statutory or**

20                  **constitutional provision on which her claim is based**

21          Wrongful termination cases are limited to "those claims finding support in an

22  important public policy based on a statutory or constitutional provision." Green

23  Ralee Eng. Co., 19 Cal.4th 66, 79 (1998). No claim is shown by vague charges

24  "unaccompanied by citations to specific statutes or constitutional provisions." Id.

25  at 83. Such charges are insufficient because they put the defendant and the court

26  "in the position of having to guess at the nature of the public policies involved, if

27  any." Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1257 (1994). It is plaintiff's

28  burden to provide the specific statutes and regulations on which the claim is based.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66314.2                          - 18 -                    DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF GILL

1   Green, 19 Cal.4th at 84.

2       Here, Gill has failed to meet this burden.  She has not alleged that her

3   termination violated any public policy.  Green, 19 Cal.4th at 79.  Her complaint

4   fails to cite to any statute or constitutional provision on which her claim is based.

5   See Complaint, ¶¶ 33-37.  This is plainly insufficient.  Turner, 7 Cal.4th at 1257.

6   As such, KnowledgeStorm and this court are improperly left to guess the public

7   policy at issue, if any.

8           **b.      Even if Plaintiff's termination violated an important**

9                     **public policy, she admitted it would not have been a**

10                    **motivating reason for her termination**

11      A legal "nexus" must be shown between the employee's protected activity

12  and the adverse employment action taken against the employee (e.g., the plaintiff

13  was discharged *because of* her refusal to commit unlawful acts, etc.).  Turner, 7

14  Cal.4th at 1258-1259 [required nexus not shown].

15      Here, even if Gill's termination violated an important public policy, which

16  her complaint readily fails to cite, Gill admitted it would not have been a motivating

17  reason for her termination.  At her deposition, Gill unequivocally testified: "…I

18  think I was terminated because – also because I did not want to participate in this

19  [allegedly falsifying start dates]. But maybe that played a smaller part…"  (Gill

20  Depo., p. 186:17-19 (emphasis added).)  She further testified: "…And I think these

21  two items [allegedly falsifying start dates and inflating proposals] maybe played a

22  little part in it, I think, because I was non-cooperating in doing these things, but I

23  think the major part of it was my race."  (Gill Depo., p. 187:20-25. (emphasis

24  added).)  As such, Gill cannot establish this element of her wrongful termination

25  claim.

26

27

28

Ford & Harrison
LLP
Attorneys At Law
Los Angeles

LA:66314.2                              - 19 -                    DEFENDANT'S MOTION FOR SUMMARY
                                                                 JUDGMENT AGAINST PLAINTIFF GILL

1        **2.    KnowledgeStorm terminated Plaintiff's employment for**
2             **legitimate, business reasons**

3        Assuming *arguendo* Gill can establish a prima facie case of wrongful

4    termination, KnowledgeStorm can show that it terminated Plaintiff's employment

5    for legitimate, business reasons that did not violate any public policy.  The analysis

6    for this wrongful termination claim is the same as KnowledgeStorm's analysis

7    above with respect to Gill's retaliation claim.  KnowledgeStorm incorporates those

8    arguments herein by reference.  See Section IV.B.2.  As Gill cannot rebut this

9    burden, her wrongful termination claim must fail as a matter of law.

10   **V.    CONCLUSION**

11       Based on the foregoing, KnowledgeStorm respectfully requests this court to

12   grant its motion for summary judgment or, in the alternative, partial summary

13   judgment against Gill.

14

15   Dated:  April 29, 2008                FORD & HARRISON LLP

16

17                                        By: /s/ Steven M. Kroll
18                                            Jeffrey D. Mokotoff
                                             Steven M. Kroll
19                                           Attorneys for Defendant
                                             KNOWLEDGESTORM, INC.

20

21

22

23

24

25

26

27

28