Steven M. Kroll, Bar No. 216196
FORD & HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401
skroll@fordharrison.com

Jeffrey D. Mokotoff, GA Bar No. 515472
FORD & HARRISON LLP
*Admitted Pro Hac Vice*
1275 Peachtree Street, NE, Suite 600
Atlanta, Georgia 30309
Telephone: (404) 888-3800
Facsimile: (404) 888-3863
jmokotoff@fordharrison.com

Attorneys for Defendant
KNOWLEDGESTORM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

JASBIR GILL, MAHMOUD KEDKAD,

Plaintiffs,

v.

KNOWLEDGESTORM, INC., a corporation, DOES 1through 50,

Defendants.

Case No. C 07-04112 PVT

**DEFENDANT KNOWLEDGESTORM, INC.'S SEPARATE STATEMENT IN SUPPORT OF ITS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF JASBIR GILL**

Date: June 3, 2008
Time 10:00 a.m.
Crtrm: 5, 4th floor

Action filed: July 13, 2007
Trial date: August 4, 2008

Defendant KnowledgeStorm, Inc. submits the following Separate Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment against Plaintiff Jasbir Gill.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:66303.1

DEFENDANT'S SEPARATE STATEMENT IN SUPPORT OF ITS SUMMARY JUDGMENT AGAINST PLAINTIFF JASBIR GILL

**UNDISPUTED MATERIAL FACTS AS TO**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Gill is of Indian ancestral origin, but was born in Canada. | 1. Deposition of Jasbir Gill ("Gill Deposition") at 13:9-20. |
| 2. KnowledgeStorm, Inc. was a company that provided search resources for technology solutions and information. | 2. Gay Decl., ¶ 3. |
| 3. KnowledgeStorm gave technology vendors opportunities to reach business and technology professionals as they conducted research online and gave contact information that converted them into web leads. | 3. Gay Decl., ¶ 3 |
| 4. Kelly Gay was the chief executive office and president of KnowledgeStorm. | 4. Gay Dec., ¶ 1; Gill Deposition at 32:16-19. |
| 5. Mike Ewers was its vice president of finance and human resources. | 5. Ewers Dec., ¶ 1; Gill Deposition at 31:24-32:1. |
| 6. Jim Canfield was its vice president of sales. | 6. Gill Deposition at 32:14-15. |
| 7. Jason Hoback was its director of sales. | 7. Gill Deposition at 32:12-13. |
| 8. Joe Brown was its western regional sales manager. | 8. Brown Dec., ¶ 2; Gill Deposition at 28:14-20. |
| 9. Joseph Niederberger, Lisa McGuire, Katie Kimball, Rachel Gordon, and co-plaintiff Mahmoud Kedkad were sales executives of KnowledgeStorm and coworkers of Gill. | 9. Gill Deposition at 54:13-19. |
| 10. In early October 2006, Gill interviewed with several employees of KnowledgeStorm at its headquarters in Atlanta, Georgia. | 10. Gill Deposition at 31:18-32:24. |
| 11. In October 2006, Brown offered Gill a sales executive position with the company. | 11. Gill Deposition at 38:19-39:5 & Ex. 3. |

| | |
|---|---|
| 12. Gill accepted the offer. | 12. Gill Deposition at 39:3-5 & Ex. 3. |
| 13. KnowledgeStorm also agreed to pay Gill's business visa fees -- estimated by Gill to be approximately $4,000 -- in order for Gill to continue to work in the United States. | 13. Gill Deposition at 40:4-13. |
| 14. Gill began working for KnowledgeStorm in November 2006. | 14. Gill Deposition at 47:20-48:7. |
| 15. Gill worked out of KnowledgeStorm's South San Francisco office. | 15. Gill Deposition at 53:11-14. |
| 16. There were approximately eight employees working in cubicles in this office. | 16. Gill Deposition at 54:13-55:8; Deposition of Kedkad ("Kedkad Deposition") at 57:24-58:13; McGuire Dec., ¶2. |
| 17. Gill was "more close" with two of her co-workers, Kimball and McGuire. | 17. Gill Deposition at 55:25-56:12. |
| 18. Gill reported directly to Brown. | 18. Gill Deposition, Ex.3; Kedkad Deposition at 62:24-63:1. |
| 19. Brown did not work out of the South Francisco office. | 19. Gill Deposition at 56:16-21; Kedkad Deposition at 64:3-17. |
| 20. Brown worked out of the Atlanta office, and traveled to the South San Francisco office once every two or three weeks. | 20. Gill Deposition at 56:16-21; Kedkad Deposition at 68:3-5. |
| 21. Prior to commencing work, Gill attended a four-day training in Atlanta office. | 21. Gill Deposition at 47:20-48:7. |
| 22. During the training, KnowledgeStorm held a presentation at the training on its employment policies and procedures, including its No-Harassment policy. | 22. Ewers Decl., ¶ 2. |
| 23. Before or at the training, Gill received KnowledgeStorm's employee handbook ("Handbook"). | 23. Gill Deposition at 49:11-23 & Exs. 4-5. |
| 24. Gill acknowledged receiving, reading and understanding the Handbook. | 24. Gill Deposition at 49:24-51:4 & Exs. 4-5. |

| | |
|---|---|
| 25. The Handbook included a No-Harassment policy that required an employee who "is being harassed . . . or believes his/her employment is being adversely affected by such conduct" to "immediately report their concerns to" either "Mike Ewers, Vice-President" or "Kelly Gay, CEO." | 25. Gill Deposition at 51:16-21, Ex. 4, p. 3; Ewers Dec., ¶ 2. |
| 26. During the first week of January 2007, Gill asked Brown to review an email that she was writing to a client. | 26. Gill Deposition at 139:19-140:6. |
| 27. While Brown was reviewing the email, he allegedly said to Gill, "Well, that's what they teach you in India? You need to learn the right way, which is the white man's way." | 27. Gill Deposition at 139:19-140:6. |
| 28. Brown then shrugged his shoulders and walked away. | 28. Gill Deposition at 139:19-140:6. |
| 29. Gill "didn't know what to make of [the remark]." | 29. Gill Deposition at 140:14-25. |
| 30. During the second week of January 2007, Brown and Gill allegedly were talking about the sales industry, and "certain sales aspects of how Indians [sic] and what kinds of jobs Indians are doing here." | 30. Gill Deposition at 150:21-151:2. |
| 31. In that context, Brown allegedly said, "Non-whites have a very difficult time in sales and they should just pack up their bags and leave." | 31. Gill Deposition at 150:21-151:2. |
| 32. During the last week of March 2007, Brown and Gill allegedly were talking about Google, and how there are "lots and lots of Indians" working there. | 32. Gill Deposition at 154:16-24. |
| 33. In that context, Brown allegedly said that "oh, they're all just developers sitting doing menial jobs and developing codes." | 33. Gill Deposition at 154:16-24. |
| 34. Gill allegedly responded, "I don't know which world you are living in. Lots of Indians here are VPs and CEOs." | 34. Gill Deposition at 154:6-15. |

| | |
|---|---|
| 35. Around the same time, during the last week of March 2007, Brown and Gill were discussing the economy, and Brown allegedly asked Gill what her thoughts were on the war in Iraq. | 35. Gill Deposition at 148:20-149:8. |
| 36. Gill allegedly responded that "this is not a time and place for us to discuss my idea or my views on the war in Iraq." Brown allegedly then said, "Oh, well, I don't care, I hate Muslims, I think all Muslims are terrorists anyway." | 36. Gill Deposition at 148:20-149:8. |
| 37. Gill is not a Muslim; rather, she is a Sikh. | 37. Gill Deposition at 149:9-12. |
| 38. While Gill was in India, Brown allegedly told co-plaintiff Kedkad that "he didn't like Indians because they were taking all the jobs in the bay area so it's good, maybe [Gill will] stay [in India]." | 38. Gill Deposition at 144:17-25. |
| 39. Co-plaintiff Kedkad allegedly told Gill this remark at the end of March 2007, a few weeks after she returned from her trip to India. | 39. Gill Deposition at 144:17-25. |
| 40. Gill traveled to India from February 9 to March 5, 2007. | 40. Gill Deposition at 90:1-7. |
| 41. Brown permitted Gill to go to India to visit her mother even though she had been employed for approximately three months, and she had not earned enough vacation to cover her trip. | 41. Gill Deposition at 190:15-191:16. |
| 42. Gill sent Brown pictures of her trip to India from her personal e-mail account. | 42. Gill Deposition at 92:1-17. |
| 43. Gill also brought back Brown wind chimes from her trip. | 43. Gill Deposition at 90:17-24. |
| 44. When asked why she brought Brown back wind chimes in March 2007 when he allegedly had already begun "systematic racial harassment" against her, Gill responded, "At this time [that she returned from her trip in March 2007], I did not classify it as racial discrimination." | 44. Gill Deposition at 91:14-25. |

| | |
|---|---|
| 45. Gill claims that Brown did not support her in the job and gave her other coworkers client leads. | 45. Gill Deposition at 61:12-20. |
| 46. Gill's coworker, McGuire, testified that "no sales executive was given leads." | 46. McGuire Dec., ¶10. |
| 47. Brown gave Gill the ISV program (a program providing her with leads based on KnowledgeStorm's relationship with IBM) to the exclusion of every other west coast salesperson. | 47. Gill Deposition at 127:18-128:6 & Ex. 14. |
| 48. When Gill made her first sale, Brown sent an e-mail to all of the company's sales employees congratulating Gill: "Great job Jasbir! Your hard work is evident by your peers and we know you will be very successful." | 48. Gill Deposition at 85:5-21 & Ex. 7. |
| 49. Gill "thank[ed] Joe Brown for his patience and support throughout this deal . . . ." | 49. Gill Deposition, Ex. 7. |
| 50. Gill referred to Brown as "Yoda Brown" because of his "wisdom." | 50. Gill Deposition, Ex. 11. |
| 51. Brown communicated his appreciation and respect for Gill in an e-mail *just one week* before she was terminated: "You are someone I admire greatly and want to help be successful here. Where you feel that I am lacking or when you feel that you need more from me or KnowledgeStorm, I want you to ask. I may not be able to accommodate specific requests, but I will always make the time to listen and try." | 51. Gill Deposition, Ex. 13. |
| 52. Gill allegedly told Hoback of the two January statements in person during the last week of January 2007. | 52. Gill Deposition at 141:20-142:2 & 152:6-9. |
| 53. Gill allegedly told Hoback about the "I don't like Indians" remark in late March 2007. | 53. Gill Deposition at 153:15-23, 156:13-22. |
| 54. Gill allegedly told Hoback about the "I hate Muslims" and "Indians doing menial jobs" remarks on April 3, 2007. | 54. Gill Deposition at 155:12-16. |

| | |
|---|---|
| 55. Gill never reported any of these alleged remarks in writing. | 55. Gill Deposition at 108:7-15. |
| 56. Gill also never reported any of these alleged remarks to Ewers or Gay. | 56. Gill Deposition at 51:22-25. |
| 57. Hoback visited the South San Francisco office, on average, one time per month. | 57. Gill Deposition at 56:22-25. |
| 58. Gill never discussed these alleged remarks with Brown. | 58. Gill Deposition at 118:23-119:3. |
| 59. Gill did not discuss these alleged remarks with the two coworkers with whom she was "more close," McGuire and Kimball. | 59. Gill Deposition at 63:7-22. |
| 60. The only co-worker Gill allegedly told about these remarks was co-Plaintiff Kedkad. | 60. Gill Deposition at 62:15-25. |
| 61. On the evening of April 11, 2007, while at the South San Francisco office, Gill printed three copies of her resume. | 61. Gill Deposition at 134:13-22, 137:24-138:12 & Ex. 15. |
| 62. Instead of printing out in the South San Francisco office, the resumes printed in the Atlanta office. | 62. Gill Deposition at 138:15-16. |
| 63. The following day, on April 12, 2007, Hoback called Gill, along with Brown. | 63. Gill Deposition at 130:8-15. |
| 64. Hoback allegedly advised Gill that she was being terminated effective April 13th because she had violated company policy, but said nothing more. | 64. Gill Deposition at 130:24-131-6. |
| 65. KnowledgeStorm has never treated any other employee more favorably, i.e., it has never disciplined less severely an employee of which it was aware that used company time and equipment to prepare/print out her resume. | 65. Gay Dec., ¶4. |
| 66. Gill now claims KnowledgeStorm terminated her employment "because [she] brought the racial comments [allegedly to the attention of Hoback]." | 66. Gill Deposition at 186:14-20. |

| | |
|---|---|
| 67. Gill admittedly neither engaged in any such alleged activity nor told anyone in management that she refused to do so. | 67. Gill Deposition at 182:10-183:3 & 186:11-13. |
| 68. Gill also admitted her alleged refusal to engage in fraudulent acts played "little part" in her termination. | 68. Gill Deposition at 187:16-25. |

**UNDISPUTED MATERIAL FACTS AS TO**

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ISSUE ONE:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on her first claim for racial harassment because Plaintiff cannot establish a prima facie claim as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 69. Defendant incorporates Facts 1, 4-12, 14-20, and 26-60 by reference. | 69. Defendant incorporates the evidence in support of Facts 1, 4-12, 14-20, and 26-60 by reference. |

**ISSUE TWO:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on her first claim for racial harassment because Plaintiff could have avoided any alleged harassment if she had complied with Defendant's No-Harassment Policy as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 70. Defendant incorporates Facts 21-25 and 52-56 and 58-60 by reference. | 70. Defendant incorporates the evidence in support of 21-25 and 52-56 and 58-60 by reference. |

**ISSUE THREE:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on her second claim for retaliation because she cannot establish a prima facie claim as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 71. Defendant incorporates Facts 1, 10-15, 18-60 by reference. | 71. Defendant incorporates the evidence in support of 1, 10-15, 18-60 by reference. |

**ISSUE FOUR:** Defendant is entitled to partial summary judgment in its favor and against Plaintiff on her second claim for retaliation because Plaintiff cannot rebut Defendant's legitimate, nonretaliatory reason for terminating her employment as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 72. Defendant incorporates Facts 61-65 by reference. | 72. Defendant incorporates the evidence in support of 61-65 by reference. |

**ISSUE FIVE:** Defendant is entitled to summary judgment in its favor and against Plaintiff on her third claim for wrongful termination in violation of public policy because she cannot establish a prima facie claim as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 73. Defendant incorporates Facts 10-12, 14, and 66-68 by reference. | 73. Defendant incorporates the evidence in support of 10-12, 14, and 66-68 by reference. |

**ISSUE SIX:** Defendant is entitled to summary judgment in its favor and against Plaintiff on her third claim for wrongful termination in violation of public policy because Plaintiff cannot rebut Defendant's legitimate, nonretaliatory reason for terminating her employment as a matter of law.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 74. Defendant incorporates Facts 61-65 by reference. | 74. Defendant incorporates the evidence in support of 61-65 by reference. |

Dated: April 29, 2008

FORD & HARRISON LLP

By: /s/ Steven M. Kroll
    Jeffrey D. Mokotoff
    Steven M. Kroll
    Attorneys for Defendant
    KNOWLEDGESTORM, INC.