1    Steven M. Kroll, Bar No. 216196
     FORD & HARRISON LLP
2    350 South Grand Avenue, Suite 2300
     Los Angeles, California 90071
3    Telephone:   (213) 237-2400
     Facsimile:   (213) 237-2401
4    skroll@fordharrison.com

5    Jeffrey D. Mokotoff, GA Bar No. 515472
     FORD & HARRISON LLP
6    *Admitted Pro Hac Vice*
     1275 Peachtree Street, NE, Suite 600
7    Atlanta, Georgia 30309
     Telephone:   (404) 888-3800
8    Facsimile:   (404) 888-3863
     jmokotoff@fordharrison.com
9
     Attorneys for Defendant
10   KNOWLEDGESTORM, INC.

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

13

14   JASBIR GILL, MAHMOUD            Case No. C 07-04112 PVT
     KEDKAD,
15                                   **DECLARATION OF JEFFREY D.**
                Plaintiffs,          **MOKOTOFF IN SUPPORT OF**
16                                   **DEFENDANT'S MOTION TO**
          v.                         **COMPEL AGAINST PLAINTIFF**
17                                   **MAHMOUD KEDKAD**
     KNOWLEDGESTORM, INC., a
18   corporation, DOES 1through 50,

19              Defendants.

20

21

22

23        The following declaration is made pursuant to 28 U.S.C. § 1746:

24

25

26

27

28

FORD & HARRISON
     LLP
ATTORNEYS AT LAW
  LOS ANGELES

## **DECLARATION OF JEFFREY D. MOKOTOFF**

I, Jeffrey D. Mokotoff, declare as follows:

1.      I am an attorney at law licensed to practice in the State of Georgia and admitted *pro hac vice* to practice in the United States District Court, Northern District of California.

2.      I am a partner with the law firm of Ford & Harrison LLP, attorneys of record for defendant KnowledgeStorm, Inc. ("Defendant") in this action.

3.      I have personal knowledge of each of the matters set forth below and, if called as a witness, could and would testify competently to each of them under oath.

4.      I am making this declaration in support of Defendant's motion to compel further responses and documents against plaintiff Mahmoud Kedkad ("Plaintiff").

5.      During discovery, our firm received the attached e-mail and resume from KnowledgeStorm's headhunter.  We produced this e-mail and resume to opposing counsel and attached the resume to KnowledgeStorm's Requests for Admission that we served on Mr. Kedkad's counsel.  Attached hereto as Exhibit "1" are true and correct copies of the subject e-mail and resume.

6.      On April 17, 2008, via e-mail and fax, I sent Kedkad's counsel, Brian Kreger, a letter outlining the bases for which KnowledgeStorm believed Mr. Kedkad's discovery responses were deficient.  In the letter, I explained, inter alia, that the information KnowledgeStorm sought was "discoverable because it is probative of Mr. Kedkad's truthfulness." Attached hereto as Exhibit "2" is a true and correct copy of the my April 17, 2008 letter.

7.      On April 21, 2008, I received a response in the mail from Mr. Kreger. In his letter, Mr. Kreger stated that he was "not sure why [I was] claiming that the information was relevant."   Attached hereto as Exhibit "3" is a true and correct copy of Mr. Kreger's April 21, 2008 letter.

8.     On April 22, 2008, in further compliance with L.R. 1-5(n), Mr. Kreger and I had a "meet and confer" telephone conference.  During the conference, Mr. Kreger stated that, because Mr. Kedkad was no longer seeking a retaliation claim or economic damages, the "after acquired evidence" defense was no longer applicable and, accordingly, whether Kedkad provided false information on his application and resume was irrelevant.  I explained that KnowledgeStorm sought the discovery responses to show that Mr. Kedkad was not worthy of belief.  I stated that I would provide Mr. Kreger with further legal support for the proposition that the requested information was relevant, and that I wanted the responses before the close of discovery.

9.     Later in the day on April 22, 2008, I e-mailed and faxed Mr. Kreger a letter further supporting KnowledgeStorm's rationale for the requested discovery responses.  Attached hereto as Exhibit "4" is a true and correct copy of my April 22, 2008 letter.

10.     Attached hereto as Exhibit "5" to my declaration is a chart summarizing the information KnowledgeStorm received from Mr. Kedkad compared to the information it has received from Mr. Kedkad's prior employers.

11.     To date, I have received no responsive information from Mr. Kreger to Request for Admissions Nos. 1-16 and Document Request Nos. 26-28.

12.     Attached hereto as Exhibit "6" is a true and correct copy of excerpts of the deposition of Mahmoud Kedkad, taken on January 15, 2008.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 12th day of May 2008, at Atlanta, Georgia.

Jeffrey D. Mokotoff

# EXHIBIT 1

**From:** Mike Kedkad [mailto:mkedkad@hotmail.com]
**Sent:** Friday, September 22, 2006 12:12 PM
**To:** ssloan@navigaservices.com
**Subject:** RE: KnowledgeStorm

Hi Stacey;

I have attached a copy of my resume for your review. You have told me you will be emailing me the questions, please do so. Thank you

*Mike Kedkad, MBA*
*Ph: 650-592-2214*
*Mobile: 650-722-4756*
*email:* **mkedkad@hotmail.com**

From: "Stacey Sloan" <ssloan@navigaservices.com>
To: <mkedkad@hotmail.com>
Subject: KnowledgeStorm
Date: Fri, 22 Sep 2006 12:33:34 -0400

Hi Mike:

I tried calling you but could not get through to your voicemail. Please let me know either way if you are interested in interviewing with KnowledgeStorm. Thank you for your time!

**Stacey Sloan**
Sr. National Recruiter
Naviga Business Services, LLC.
404.316.6220
www.navigaservices.com

**MIKE KEDKAD, MBA**
8 Avocet Dr, Redwood City, Ca. 94065
**(650) 592-2214**
*mkedkad@hotmail.com*

**Sr. Sales Executive │Sr. Sales Engineer │Sales Manager**

### Skills/Competencies

- Sales veteran with over 20 years of a proven track record for consistently achieving and exceeding quota in technical sales, and sales management
- Well versed in the art of complex selling by utilizing proven solution/consultative selling methodologies and skill sets, in Vertical, Channel or Geographic accounts arena
- Proven skills in managing customer relations and expectations, time management, project management, account prioritization, forecasting, and resource utilization
- Results-oriented, self-motivated, skilled communicator, independent, persuasive, professional, and team player
- Strong in-depth technical knowledge, E-services, Portals, ASP hosted solution, licensing, and outsourced solutions.

### Work History

**SunGard Systems; New York, NY**                                        April 03- July 06
*Director of Business Development/National Sales Manager*

*With annual revenue of $4 billion, SunGard is a global leader in software and processing solutions for financial services, higher education and the public sector.*

Responsible for penetrating and developing new markets for portfolio management, investment accounting, compliance, and reporting solutions to the leading financial institutions.   Identify market opportunities in a vertical that includes Asset Mangers, Banks, Custodian Banks, and Investment Managers.  Build partnerships through networking, personal contacts, trade shows, publications, existing SunGard relationships, and cold calling.  Independently plan and develop marketing campaigns, marketing strategies, and marketing material for this new market.  Deliver clear & effective value propositions to C-level executives plan and lead sales meetings, handle objections, document meetings and sales activity in CRM.  Prepare quarterly/annual accurate and thorough sales activity reports, forecast reports and present to upper management.  Effectively perform needs assessments, facilitate product demos, develops sales proposals, and answer RFP's.  Work with operations, client services, finance, and legal to finalize the sale.  Research the market and stay up to date with market changes, and competition.  Participate in civic and professional organizations, company wide meetings, workshops and seminars.  Also responsible for account management after the sale with focus on satisfaction/loyalty, sales support and up-selling.

*Achievements:*
- ✓ Developed a new market introducing  $5 Million in new revenues
- ✓ Led the territory to become the highest revenue producing
- ✓ Identified product improvements
- ✓ Awarded 100% club every single year

**Xtiva Financial Systems; New York, NY**                    July 01- April 03
*National Sales Manager*

*Xtiva Financial Systems is a leading provider of enterprise-wide business and technology solutions for the financials service industry. Xtiva offers an ASP model hosted suite of applications utilizing N-tiered architecture supporting data analytics (OLAP), decision support, and reporting.*

Leveraging financial, technical, and business skills in providing an overall solution for back-office commission management system. This position is responsible for sales and the acquisition of new accounts through cold calls, warm leads from strategic partners, response to RFP's, and personal networks. Responsible for delivering informative and consultive sales presentations tailored to clients needs, recommending solutions and solving complex issues. Demo of products on site, or online using Webex. Responsible for pipeline management, account penetration and timely follow up with C level executives and decision makers. Develop and present proposals based on thorough understanding of business needs, customization, and data flow. Managed customer expectations, ensuring successful product implementation and delivery, product training and ongoing support. Provide feedback to management to strategically assist in sales growth and improved product functionality, and features.

*Achievements:*
- ✓ Surpassed quota helping the company achieve revenue goals
- ✓ Met aggressive sales targets to establish the company as a leader
- ✓ Excel under the pressure of quarterly quota objectives.

**Vicinity Corporation/Mapblast; Palo Alto, California**         December 96-July 01
*Sr. Sales Executive*

*Vicinity Corporation/Mapblast is a leading provider of technology-based marketing solutions for businesses, and governments, using Web, wireless and speech platforms*

Responsible for selling a Portal providing Location-based technology in multiple vertical markets. Independently planed, developed, and led the formulation and implementation of sales strategies with focus on attaining sales objectives. Identified new opportunities, and expanded sales through canvassing, cold calling, letter writing campaigns, cultivation of customer referrals, timely follow-up on sales leads, and personal networks. Prepared, presented and followed up on proposals, drafted and negotiated contracts. Assisted both the customer and Vicinity project managers as required to assure successful product delivery, product training and ongoing support. Managed post launch partner relationships to insure all contractual obligations were met from both parties. Negotiated and closed contract renewals. Participated in trade and professional societies, and attended local and regional trade shows.

*Achievements:*
- ✓ Grew revenues to $5 million in 3 years
- ✓ Played a key role in client relationship contributing to the 95% customer retention ratio.
- ✓ Played a key role in Vicinity's successful Public Offering in 2000.

**Hewlett Packard Company; Denver, Colorado**            March 88-September 96
*National Account Manager*

*Hewlett Packard T&M organization is the world's leading provider of Electronic Test and Measurement tools*

Responsible for selling network management trouble-shooting equipment, and network management software worldwide. Applied consultive/solution approach to recommend products and solve customer issues. Designed, verified, presented, and demo solutions to clients. Played a consultive role to the customer as go to person for advanced product concepts, and future directions. Coordinated activities with product manager to attend trade shows, and demo of new products. Developed account plans and strategies

for relationships with key decision makers. Strategically serviced accounts building HP product loyalty, and customer commitment. Responsible for developing "winning strategies" to execute and win additional revenues from existing accounts. Provided accurate quarterly sales forecasts and provided monthly updates.

### *Achievements:*
- ✓ HP Club Award for 125% of quota two years running
- ✓ Three times winner sales person of the year award
- ✓ Princes Resort trip winner for exceeding set objectives

## International Purchasing Consultants; Denver, Colorado                July 81- February 88
*Worldwide Sales Manager*

Established, staffed, and managed international sales division for this start up multi media Company. Established the international department as an expansion strategy. Opened, and managed remote offices overseas. Effectively trained and managed a sales force of twelve account executives, a director, and over $10 million of sales. Managed sales activity reporting and monthly funnel reporting.
Developed effective business strategies to increase revenues and profits through new export markets. Motivate, train and direct staff to stay focused on achieving key priorities on weekly, monthly, and annual basis as determined by executive management; track progress and provide reports to management as required. Maximize the development of staff by directing the implementation of ongoing employee training and development programs in conjunction with senior management. Resolve any issues with customers or staff in a timely and professional manner.

### *Achievements:*
- ✓ Created and Directed the international sales department
- ✓ Opened multiple international offices
- ✓ Successfully grew sales to $10 million

## Education

**MBA** Business Administration and Management; University Of Phoenix
**B S** Chemical Engineering; University of California Santa Barbara

## Certifications/ Accreditations

- Miller Hieman Strategic Selling/Conceptual Selling
- Communications Designs Inc; Ten Key to Powerful Presenting
- Decker Communications Inc; Effective Communicating
- Hewlett Packard; PAR Skills To Obtaining Valuable Business Results
- Hewlett Packard; Test & Measurement Basics
- Hasler Sales Education Program; Selling at the Next Level
- Nextel; Technical Marketing
- Brian Tracy; 24 Techniques for Closing the Sale
- TechLink; Project Management For IT Professionals Certifications
- Dearborn; General Securities Representative (Series 7)

# EXHIBIT 2

LAW OFFICES

# FORD & HARRISON LLP

A LIMITED LIABILITY PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS AND INDIVIDUALS

1275 Peachtree Street N.E., Suite 600, Atlanta, Georgia 30309
Tel (404) 888-3800  Fax (404) 888-3863
www.fordharrison.com

Writer's Direct Dial:

JEFFREY D. MOKOTOFF
(404) 888-3804
jmokotoff@fordharrison.com

April 17, 2008

**VIA E-MAIL AND FACSIMILE**

Brian S. Kreger, Esq.
Lamberto & Kreger
160 West Santa Clara
Suite 1050
San Jose, CA 95113

Re:   Jabir Gill and Mahmoud Kedkad v. KnowledgeStorm, Inc.
      **Kedkad's Deficient Responses to Request for Production of Documents, Set
      Two and to Request for Admissions, Set One**

Dear Brian:

I am sending this letter pursuant to Local Rule 37-1, to outline the bases for which we believe plaintiff Mahmoud Kedkad's discovery responses are deficient.  Pursuant to Local Rule 1-5(n), please let me know when you are available to meet and confer by Friday, April 25, 2008, so that we may attempt to resolve these outstanding discovery disputes:

_Kedkad's Responses to Request for Production of Documents, Set Two_

As an initial matter, Mr. Kedkad's document responses are deficient pursuant to Local Rule 34-1.  More specifically, "[a] response to a request for production or inspection made pursuant to Federal Rule of Civil Procedure 34(a) **must set forth each request in full before each response or objection**."  Please correct Mr. Kedkad's responses to conform to this requirement.

In its Requests for Production Nos. 26 through 28, KnowledgeStorm sought all resumes and curriculum vitae of Mr. Kedkad in his possession, custody, or control, as well as any documents that summarize Mr. Kedkad's employment history from 1981 to the present.  You objected to these requests on the grounds that they were "not reasonably calculated to lead to discoverable evidence, violates Plaintiff's right to privacy and [are] propounded for the improper purpose of harassment."  These objections are without merit.

These requests are directly relevant to Mr. Kedkad's claims and KnowledgeStorm's defenses.  Each party has the right to discover "any nonprivileged matter that is relevant to _any party's claim or defenses_."  Relevant information may be discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence.  (Fed. R. Civ. Pro. 26(b)(1).)

In his complaint, Mr. Kedkad seeks "lost wages, lost employee benefits, commissions, bonuses, [and] vacation benefits," as a result of Defendant's alleged harassment and retaliation.

Brian S. Kreger, Esq.
April 17, 2008
Page 2

If Mr. Kedkad's claims of harassment and retaliation did not in any way affect his salary or compensation, then his request for what is in essence back pay and front pay are inappropriate and inapplicable as remedies for his two claims. Accordingly, while Mr. Kedkad admits he is not seeking a claim for wrongful termination, at least on the face of Mr. Kedkad's complaint, he has placed the fact of lost compensation at issue, and KnowledgeStorm is entitled to defend against that claim by discovering such employment information.

In its answer, KnowledgeStorm asserts an affirmative defense of after-acquired evidence to Mr. Kedkad's claims. Employee wrongdoing in after-acquired evidence cases generally falls into one of two categories: (1) misrepresentations on a resume or job application; or (2) posthire, on-the-job misconduct. Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal.App.4th 620, 632 (1995). Therefore, evidence of whether Mr. Kedkad lied on his resume provided to KnowledgeStorm, as well as to other employers, is relevant to an after-acquired evidence defense. See, e.g., Newland v. Stevinson Toyota East, Inc., 2006 U.S. Dist. LEXIS 21172 (D. Co. 2006).

Equally as important, witnesses who take the stand put their character for truthfulness in issue. Thus, the trier of fact may consider a witness' character for truthfulness or untruthfulness in assessing the witness' credibility. Fed. R. Evid. 608(b). Such employment information is discoverable because it is probative of Mr. Kedkad's truthfulness. Schmidt v. Medicalodges, Inc., 523 F. Supp.2d 1256 (D. Ks. 2007).

Furthermore, the requested documents are not protected by any right to privacy. In California, the constitutional right to privacy is not absolute, but a right subject to invasion where a compelling public interest is involved. See Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604 (C.D. Cal. 1995). No such privilege extends to resumes, curriculum vitae, or documents that simply summarize a person's employment history. Even if it did, there is a compelling public interest for the production of such documentation, which is directly relevant to Mr. Kedkad's claims and KnowledgeStorm's defenses.

Lastly, these requests were not propounded for the improper purpose of harassment. They are readily sufficient because the documents to be produced are of a category described with "reasonable particularity" in the requests. Fed. R. Civ. Pro. 34(b)(1)(A). As discussed above, the requests are also directly relevant to Mr. Kedkad's claims and KnowledgeStorm's defenses. Notably, Mr. Kedkad has not provided any information on how these requests are harassing.

## Kedkad's Responses to Request for Admissions, Set One

As an initial matter, Mr. Kedkad's Responses to Request for Admissions do not comply with Local Rule 36-1. Specifically, "[r]esponses to requests for admission *must set forth each request in full before each response or objection*." Please conform Mr. Kedkad's responses (as well as Ms. Gill's responses) to this requirement.

Brian S. Kreger, Esq.
April 17, 2008
Page 3

Defendant's Requests for Admissions 1 through 16 relate to requests for admissions concerning Mr. Kedkad's prior employment and positions held, as identified on a variety of resumes received by Defendant during discovery. Mr. Kedkad objected to each of these requests "on the grounds that it is not reasonably calculated to lead to discoverable evidence, violates Plaintiff's right to privacy and is propounded for the improper purpose of harassment." However, these requests are proper for all of the same reasons discussed above.

Additionally, we believe Mr. Kedkad's responses to Requests for Admissions Nos. 25 and 26 are deficient. More specifically, in those requests, we asked Mr. Kedkad to admit that Elysse Miller and Rachel Gordon made a complaint of harassment against him during his employment. You objected to these requests as "vague, ambiguous, and unintelligible." We believe that the requests are clear, unambiguous, and intelligible. To the extent that Mr. Kedkad does not understand what Defendant is requesting that he admit, please identify the ambiguity so that we can resolve appropriately this discovery dispute.

I look forward to hearing from you concerning this request to meet and confer.

Sincerely,

JEFFREY D. MOKOTOFF

JDM/ked

FORD & HARRISON LLP

# EXHIBIT 3



&LAMBERTO
&KREGER

160 West Santa Clara
Suite 1050
San Jose, CA 95113
phone: 408.999.0300
fax: 408.999.0301

Brian S. Kreger
Attorney at Law

April 18, 2008

Jeff Mokotoff
Ford and Harrison
1275 Peachtree St., Suite 600
Atlanta, GA 30309

   Re: Jasbir Gill and Mahmoud Kedkad v. KnowledgeStorm Inc.

Dear Mr. Mokotoff:

   In follow up to your meet and confer letter, I am not sure why you are claiming that the information is relevant. You were present at plaintiff's deposition when we put on the record that there is no longer any claim for retaliation due to the release he signed when he left Knowledgestorm. ( See page 93). Additionally, as you can see from the responses, he is not making a claim for economic loss. The "after acquired evidence" affirmative defense is not a defense to a claim for racial harassment. Please give me a call to discuss this when you get a chance.

     Very truly yours,

     BRIAN S. KREGER

# EXHIBIT 4

LAW OFFICES

# FORD & HARRISON LLP

A LIMITED LIABILITY PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS AND INDIVIDUALS

1275 Peachtree Street N.E., Suite 600, Atlanta, Georgia 30309
Tel (404) 888-3800  Fax (404) 888-3863
www.fordharrison.com

Writer's Direct Dial:

JEFFREY D. MOKOTOFF
(404) 888-3804
jmokotoff@fordharrison.com

April 22, 2008

**VIA E-MAIL AND FACSIMILE**

Brian S. Kreger, Esq.
Lamberto & Kreger
160 West Santa Clara
Suite 1050
San Jose, CA 95113

Re:    <u>Jabir Gill and Mahmoud Kedkad v. KnowledgeStorm, Inc.</u>
       **Kedkad's Deficient Responses to Request for Production of Documents**
       **Nos. 26-28 and Response to Requests for Admission**

Dear Brian:

    As discussed, in follow-up to our telephone conversation today, as well as my letter dated April 17, 2008, and your letter dated April 18, 2008, this letter confirms that Mr. Kedkad is no longer bringing a cause of action for retaliation. Additionally, pursuant to LR 37-1, in a further effort to resolve the discovery disputes identified in my April 17th letter, we believe that the information we are seeking is discoverable because it goes directly to whether Mr. Kedkad is worthy of belief. At his deposition, when asked questions about past employment information contained on his resume, Mr. Kedkad admitted that the information contained on his application was not accurate. Mr. Kedkad testified that the inaccuracies were "nothing more than a mistake" and that the information was incorrect simply because he was rushed to complete his application. (Kedkad dep., pp. 23-24).

    After his deposition, we subsequently received from KnowledgeStorm's headhunter the resume Mr. Kedkad provided to KnowledgeStorm, containing some of the same "inaccuracies" contained on his employment application. When we subpoenaed his personnel records from his prior employers, the documents we received from those employers further called into doubt the accuracy of the information contained in his deposition, in his application and on the resume he provided to KnowledgeStorm's headhunter. Accordingly, we sent the Requests for Admission and Document Requests at issue to discover whether Mr. Kedkad is worthy of belief.

    "[I]nformation showing that a person having knowledge of discoverable facts may not be worthy of belief *is always relevant to the subject matter of the action.*" 8 Wright & Miller, Federal Practice and Procedure; Civil § 2015 (1970) (emphasis supplied). <u>See also</u> 4 Moore's Federal Practice, para. 26.56[1] (2d ed. 1983). Therefore, "discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition." 8 Wright & Miller, at § 2015. In the context of discovery for impeachment purposes, this means deciding whether disclosure may reveal information affecting the credence

Brian S. Kreger, Esq.
April 22, 2008
Page 2

afforded to a witness' trial testimony.  Davidson Pipe Company v. Laventhol and Horwath, 120
F.R.D. 455, 462 (S.D.N.Y. 1988).

    The prior acts in question, i.e., Mr. Kedkad's statements on his application and resume,
must demonstrate "a propensity for deception."  Davidson Pipe Co., 120 F.R.D. at 462.  False
statements on an employment application or resume are probative of a lack of credibility, see,
e.g., Lewis v. Baker, 526 F.2d 470, 475-76 (2d Cir. 1975), particularly when, as here, they are
made in the context of the very employment on which he premises his remaining claim of
harassment.  See also United States v. Int'l Business Machines Corp., 66 F.R.D. 215, 218
(S.D.N.Y. 1974) ("One of the purposes of discovery is to obtain information for use on cross-
examination and for the impeachment of witnesses . . . . The credibility of a witness' testimony is
of the utmost importance since to evaluate the state of proof one must determine which evidence
and what testimony is believable") (citations omitted).  Accordingly, as identified in my April
17th letter, we are requesting that Mr. Kedkad provided us with the requested responses to our
discovery.

    Finally, as discussed, Joe Brown will be ready as your first deponent on April 29th.
Please advise of the start time of his deposition, and of the date and start times of the depositions
of Kelly Gay and Jason Hoback.

                                        Sincerely,

                                        JEFFREY D. MOKOTOFF

JDM/ked

FORD & HARRISON LLP

# EXHIBIT 5

## MAHMOUD KEDKAD EMPLOYMENT CHART

| EMPLOYER | SUNGARD RESUME[1] | NAVIGA RESUME[2] | CLIENT EMP APPL[3] | KEDKAD DEPO[4] | VICINITY RESUME[5] (EMAIL) | HP CV[6] |
|---|---|---|---|---|---|---|
| Sungard Data Systems, Inc. | | April 2003-July 2006[7] (Director of Business Dev/Nat Sales Manager) | 2000-2003 (No job title listed) | Nov/Dec 2005 - July 2006 (Sales) | | |
| XTIVA Financial Systems, Inc. | April 2003-Present (Sales Executive) | July 2001-April 2003 (National Sales Manager) | 1998-2000 (No job title listed) | 2005 (Sales) | | |
| Neopost Inc./Ascom Hasler | July 01-April 03 (Sr. Account Executive) | **Not on Naviga Resume** | **Not on client emp appl** | 2001-2004 (Sales) | | |
| Live Metro[8] Company and InfoUSA | **Not on Sungard resume** | **Not on Naviga resume** | **Not on client emp app** | Depo pg 31-33 | | |
| Vicinity Corporation/ Mapblast | Dec 96-July 01 (Sr. Account | Dec 96-July 01 (Sr. Sales Executive) | 1996-1998 (No job title listed) | 1999-2000 (Sales) | | |

[1] Resume submitted by Mahmoud Kedkad to Sungard Data Systems, Inc.

[2] Resume submitted by Mahmoud Kedkad to Naviga Services (Recruiter for Knowledgestorm, Inc.)

[3] Knowledgestorm, Inc. employment application submitted and signed by Mahmoud Kedkad on November 20, 2006.

[4] Kedkad deposition taken on January 15, 2008, pages 25-33.

[5] Vicinity documents obtained from Microsoft Corp which contains Kedkad's employment history (on an email) prior to his being hired by Vicinity Corporation. Kedkad was hired at Vicinity on 2/13/1999 and resigned/voluntary on 7/28/2000.

[6] HP – Hewlett Packard submitted resume/cv. Kedkad's start date was 12/09/1996 as a coordinator/telemarketing. He was terminated on 11/18/1997 for misconduct at HPs kickoff on 11/07/1997 at Cheyenne Mountain Resort in Colorado Springs, CO. He had a confrontation with hotel and event staff following dinner in violation of HPs misconduct policy.

[7] In the Sungard documents/personnel file we received pursuant to our subpoena request, Kedkad's dates of employment with Sungard were December 7, 2005 to June 30, 2006. He only worked at Sungard for roughly 6/7 months – not the three (3) years identified on his Knowledgestorm, Inc. employment application.

[8] Kedkad states in his deposition testimony that he worked at these two (2) small companies for a short period of time between his employment with Vicinity and Neoblast. These were small companies which folded and went out of business. Kedkad has not identified these two (2) companies on any of his submitted resumes or employment applications.

| | | | | | | |
|---|---|---|---|---|---|---|
| | Executive) | | | | | |
| Kedkad Comm. (Denver, CO) | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | Jan 1997-Sept 1999 (Web Marketer ) | |
| Nextel Comm. (Denver,CO) | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | Oct 1998-Present(99) Customer Sys Eng | |
| Manpower Tech Services (Denver, CO) | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | March 1995-Dec 1996 (Computer Consultant) | |
| Primo, Inc. (Denver, CO) | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | Aug 1993-March 1995 (Pres & CEO) | 1992-1995 (Owner/ Mgr) |
| Hewlett Packard Company | March 88-Sept 96 (Field Sales Engineer) | March 88-Sept 96 (National Account Mgr) | Not on client emp appl | Not referenced in depo | Dec 1996-May 1998 (Internet Marketing Director) | |
| International Purchasing Consultants | July 81-Feb 88 (Worldwide Sales Manager) | July 81-Feb 88 (Worldwide Sales Manager) | Not on client emp appl | Not referenced in depo | June 1990 – Aug 1993 (Sales Manager) | 1990-1992 (Cust service/ sales) |
| Kedkad Comm (Albany, NY) | Not on Sungard resume | Not on Naviga resume | Not on client emp appl | Not referenced in depo | Oct 1988-June 1990 (Int Bus Con) | Not on HP resume |
| Sbarro Licensing Inc. | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | July 1982-Oct 1988 (Reg Mgr) | 1984-1986 (Reg Mgr) |
| Dept of Chemical Industry/Poly Chloride Plant | Not on Sungard resume | Not on Naviga resume | Not on client emp app | Not referenced in depo | Not on Vicinity resume | 1981-1984 (Process Eng) |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT 6

CERTIFIED
COPY

```
 1                 UNITED STATES DISTRICT COURT

 2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

 3                          --o--

 4

 5    JASBIR GILL, MAHMOUD KEDKAD,    )
                                      )
 6              Plaintiffs,           )
                                      )
 7    vs.                             )    No. C 07-04112 PVT
                                      )
 8    KNOWLEDGESTORM, INC., a         )
      Corporation, DOES 1 through 50,)
 9                                    )
                Defendants.           )
10    -------------------------------

11

12

13

14              DEPOSITION OF MAHMOUD KEDKAD

15

16

17    DATE:          Tuesday, January 15, 2008

18

19    TIME:          10:15 a.m.

20

21    LOCATION:      Bell & Myers
                     2055 Junction Avenue, Suite 200
22                   San Jose, CA 95131

23

24    REPORTED BY:   Anna S. Allen
                     Certified Shorthand Reporter
25                   License Number 9954
```

**KNOWLEDGESTORM**
The Business Technology Network

## APPLICATION FOR EMPLOYMENT
Equal Opportunity Employer - At Will Employer
*PLEASE PRINT OR TYPE - NOT VALID UNLESS SIGNED AT BOTTOM OF LAST PAGE*

Statements made by applicants for employment on this application form will be carefully checked for accuracy. The use of this form does not mean there are positions open and does not obligate us in any way.

KnowledgeStorm.com does not engage in any form of unlawful discrimination. If you feel that you have been discriminated against for any reason, please call this to the attention of Human Resources so that we may address your concern.

Position(s) applied for ___Sales executive___

Date available to begin __11/20/06__  o Temporary or Summer  ✓Part-time   Date __11/20/06__

Referral Source: o Advertisement  ☒Agency  o Friend o Relative   o Walk-in   ☒ Full-time

Name __Kedkad    Mahmond__                    SS# __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__
(Last)    (First)    (Middle)

Current Address __8   Avocet   Dr.  #203__     Phone __(650) 592-2214__
                __Redwood City,   Ca.   94065__   How Long __6 mos.__
(City)                (State)        (Zip)

State age if under 18 years of age: ___   If less than 18, do you have appropriate employment or age certificates? ___ Yes ___ No

Are you known to jobs/schools under a different name? __Yes__ If yes, what other name? __Mike__

Can you submit documents to verify both your identification and legal right to work in the United States? __Yes__

Can you perform the essential functions of the position you are applying for with reasonable accommodations? __Yes__

## EMPLOYMENT EXPERIENCE -
List each job held.  Start with your Present or Last Job.  If unemployed for a month or longer, please so indicate.
MY PRESENT EMPLOYER o MAY     o MAY NOT BE CONTACTED (Check Correct Response)

Name and Address of Employer: __Sungard systems, NY__

From: Month/Year __2000__  To: Month/Year __2003__    ☒Full-Time  o Part-Time
Supervisor's Name and Title: __John Vercellino__      Telephone (___) ___

Name and Address of Employer: __Xtiva Financials, NY__

From: Month/Year __1998__  To: Month/Year __2000__    ☒Full-Time  o Part-Time
Supervisor's Name and Title: __William Sterling__      Telephone (___) ___

Name and Address of Employer: __Vicinity Corp, Palo Alto, Ca.__

From: Month/Year __1996__  To: Month/Year __1998__    o Full-Time  o Part-Time
Supervisor's Name and Title: ___                       Telephone (___) ___

Name and Address of Employer: ___

From: Month/Year ___  To: Month/Year ___        o Full-Time  o Part-Time
Supervisor's Name and Title: ___                 Telephone (___) ___



DEFENDANT'S
EXHIBIT

1-15-08

| | Elementary | High School | College/University | Graduate |
|---|---|---|---|---|
| School Name and Address | | | UCSB. Santa Barbara | Univ. of Phoenix Denver, Co |
| Years Completed (Circle) | 4  5  6  7 (8) | 9  10  11 (12) | 1  2  3 (4) | 1  2 (3) 4 |
| Diploma/Degree | | | | |
| Describe Course of Study: | | | BS Engr. | MBA |
| Describe special skills or training related to job for which applied: | | | | |

N/A

o Typing (Speed _____)    o Shorthand (Speed _____)   o Bookkeeping   o C.R.T.  o Word Processing

o Handle Cash             o Switchboard             o Mini-computer  o Other _____

Computer Equipment: _____

Programming Languages: _____

_____

Have you ever been discharged by an employer?    o Yes  ☒ No    Explain _____

Have you ever been convicted of a crime?    o Yes  ☒ No

If yes, state the offense for which you were convicted, date conviction was rendered and sentence imposed:

_____

*NOTE: Conviction of a crime will not necessarily be a bar to employment. Factors such as age at the time of the offense, type of offense, remoteness of the offense in time and rehabilitation will be taken into account in determining effect on suitability for employment.*

Use this space for additional comments as necessary, on any matter relative to your application.

_____
_____


This application will be given every consideration, but its receipt does not imply that the applicant will be employed.

All the statements and information on my application are true and correct and no attempt has been made to conceal or withhold pertinent information. I understand any falsification or misrepresentation is cause for termination in the event I am employed.

I hereby authorize investigation of all statements I have made herein. I authorize the companies or persons named herein to give any information regarding my past employment, together with any information they may have regarding me whether or not it is on their records. I hereby release said companies or persons, and KnowledgeStorm.com, from all liability for any damage whatsoever for issuing or obtaining this information. I authorize a Background Check to include: county and federal criminal records, social security number verification/trace, and previous employment.

I understand that this application will only be considered active for 30 days from the date of applications.

_____          12/6/06
Signature of Applicant                    Date

1    A.    Actually, after looking at the application,

2    those dates are not accurate.

3    Q.    Okay.   What are the accurate dates?

4    A.    2005 to 2006.

5    Q.    2005 --

6    A.    Um-hum.

7    Q.    -- to 2006.

8         Do you recall why you would have put 2000 to

9    2003?

10    A.    When I did not receive my paycheck, my first

11    paycheck from SunGard, I was -- from KnowledgeStorm, I

12    went inquiring with the accounting.   I went through

13    Chris Glennon, inquiring.   And he asked me if I have

14    ever received a package to fill out, and I said, I never

15    received a package.

16         And so I waited for a couple of days, and I was

17    handed a package while I was doing my training.   And I

18    was asked to quickly fill it out and bring it back.   I

19    did not have enough time, and the significance of it was

20    played down to me.

21         And when it came to the application for

22    employment, I told them I don't have my information with

23    me.   And they said, just fill out whatever you can and

24    bring it back, because you've already been hired and

25    your background has been checked.

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com

1      Q.    In other words, you put down these dates

2   because you didn't have information with you that would

3   have been able to corroborate when you worked for

4   SunGard Systems?

5      A.    I would not say that, because -- I would say I

6   must have been paying attention in the class.  I filled

7   this out while I'm sitting in the class.  So I paid very

8   little attention to it.  I would not make such a

9   mistake.

10     Q.    But you're saying it was a mistake?  In other

11  words, you weren't paying enough attention to the

12  application when you were filling it out and so this was

13  nothing more than a mistake?

14     A.    Yes.

15     Q.    In terms of when you worked for SunGard

16  Systems?

17     A.    Yes, sir.

18     Q.    So you worked for SunGard Systems out of your

19  home office in New York from 2005 through when in 2006?

20     A.    Until July 2006.

21     Q.    Why did you leave employment with SunGard

22  Systems?

23     A.    I informed SunGard that I need to move back to

24  California.

25     Q.    So you resigned?

24

1    think we have gone through the time period that you

2    worked for Neopost -- ultimately Neopost, 2001 through

3    2004, Vicinity Corporation was 1999 through 2000.

4    You've mentioned you've done some consulting work off

5    and on during those time periods --

6        A.    Um-hum.

7        Q.    -- where you weren't working for employers; is

8    that correct?

9        A.    Yes.

10        Q.    You would have done that as an independent

11    contractor?

12        A.    Yes.

13        Q.    Was there a particular company that you

14    incorporated to do this work?

15        A.    No, just individual.

16        Q.    Okay.  And do you recall any employment prior

17    to your employment with Vicinity Corporation?

18        A.    I cannot recall all of that history unless I

19    have something I can refer to.

20        Q.    How about after Vicinity Corporation?  In other

21    words, you've identified four different employers from

22    approximately 1999 until you started working for

23    KnowledgeStorm.  Were there any other employers you can

24    recall?

25        A.    In between Vicinity and Neopost, I have done

30

1    with the recruiter which led you to KnowledgeStorm, did

2    you provide the recruiter -- strike that.

3              Do you know how the recruiter got your name?

4        A.   Off a job board.

5        Q.   Okay.  Did you actually post a resume onto a

6    job board?

7        A.   Yes.

8        Q.   Do you have a copy of that resume?

9        A.   No.

10       Q.   Okay.  Do you recall what job board your resume

11   was on?

12       A.   Could be Dice, could be JobHunter, could be

13   Yahoo jobs.

14       Q.   What was the third one?  First one was Dice, I

15   think you said?

16       A.   Dice, yeah.

17       Q.   Or JobHunter and the third one might have been?

18       A.   Maybe Yahoo.

19       Q.   Do you have a resume that you currently have,

20   an updated resume?

21       A.   No, sir.

22       Q.   Okay.  At the time that you were -- that you

23   got the call from the headhunter, though, you had a

24   resume that was posted?

25       A.   Yes.

46

1                    REPORTER'S CERTIFICATE

2

3

4         I, ANNA ALLEN, CSR 9954, Certified Shorthand

5    Reporter, certify;

6         That the foregoing proceedings were taken before me

7    at the time and place therein set forth, at which time

8    the witness was put under oath by me;

9         That the testimony of the witness, the questions

10   propounded, and all objections and statements made at

11   the time of the examination were recorded

12   stenographically by me and were thereafter transcribed;

13        That the foregoing is a true and correct transcript

14   of my shorthand notes so taken.

15        I further certify that I am not a relative or

16   employee of any attorney of the parties, nor financially

17   interested in the action.

18        I declare under penalty of perjury under the laws

19   of California that the foregoing is true and correct.

20

21

22

23

24   _____

                              Anna Allen, CSR No. 9954

25