1  BRIAN S. KREGER, State Bar No. 106707
   LAMBERTO & KREGER
2  160 W. Santa Clara St., Suite 1050
   San Jose, CA 95113
3  Telephone: (408) 999-0300
   Facsimile: (408) 999-0301
4
   Attorneys for Plaintiffs
5

6

7

8               UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA-SAN JOSE DIVISION

10

11 JASBIR GILL, MAHMOUD KEDKAD,            **Case No. C 07-04112PVT**

12              Plaintiffs,
13
   vs.                                     **PLAINTIFF KEDKAD'S**
14                                          **MEMORANDUM OF POINTS AND**
   KNOWLEDGESTORM, INC. a corporation,     **AUTHORITIES IN OPPOSITION**
15 DOES 1 THROUGH 50,                      **TO DEFENDANT'S MOTION FOR**
                                            **SUMMARY JUDGEMENT OR**
16              Defendants.                 **PARTIAL SUMMARY JUDGMENT**

17                                          Date: June 3, 2008
                                            Time: 10:00 a.m.
18  _____/  Courtroom: 5

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**A.  INTRODUCTION** ……………………………………………………………5

**B.  SUMMARY JUDGEMENT MAY NOT BE GRANTED UNLESS DEFENDANT MEETS ITS BURDEN OF SHOWING THAT PLAINTIFF CAN NOT PREVAIL AS A MATTER OF LAW, ON ANY THEORY OF RECOVERY**………………………………………………………………5

**C.  THE LEGAL STANDARD FOR RACIAL HARASSMENT**…………………………6

**D.  NO SUMMARY JUDGEMENT IS AVAILABLE ON THE BASIS OF "AVOIDABLE CONSEQUENCES"**……………………………………10

**E.  THE EVIDENCE OF RACIAL HARASSMENT SHOWS IT WAS SEVERE OR PERVASIVE**………………………………………………………11

**F.  CONCLUSION**………………………………………………………………15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baskerville v. Culligan Int'l Co.* (7th Cir. 1995) 50 F.3d 428..........................8

*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F3d 917..........................7,8

*Cruz v. Coach Store Inc.* (2nd Cir. 2000) 202 Fed 560..................................9

*Ellison v. Brady* (9th Cir. 1991) 924 F2d 872...............................................7

*Harris v. Forklift Systems, Inc.* (1993) 510 US 17........................................7

*Hostetler v. Quality Dining, Inc* (7th Cir. 2000) 218 F3d 798........................7

*Quantock v. Shared Marketing Services, Inc.,*
(7th Cir. 2002) 312 F.3d 1408.......................................................................8

*Rodgers v. Western-Southern Life Insurance*
( 7th Cir. 1993) 12 F3d 668........................................................................6,9

*Taylor v. Metzger* (1998) 152 N.J. 490.........................................................9

## STATE CASES

*Dee v. Vintage Petroleum* (2003) 106 CA4th 30..........................................9

*Evan F. v. Hughson United Methodist Church* (1992) 8 CA 4th 828..............6

*Fisher v. San Pedro Peninsula Hosp.* (1989) 214 CA3d 590........................7

*Kulesa v. Castleberry* (1996) 47 CA4th 103...............................................6

*Lyle v. Warner Bros. Television Prods.* (2006) 38 C4th 264 ........................8

*McManis v. San Diego Postal Credit Union* (1998) 61 CA 4th 547................5

*Myers v. Trendwest Resorts Inc.* (2007) 148 CA4th 1403..........................11

*Podolsky v. First Healthcare Corp.* (1996) 50 CA 4th 632............................6

*State Dept. Of Health Services v. Superior Court* (2003) 31 C4th 1026....7,10

*Stimson v. Carlson* (1992) 11 CA 4th 1201................................................6

*Wattenberger v. Cincinnati Reds, Inc.* (1994) 28 CA 4th 746......................5

**STATUTES**

California Government Code 12940(j)(1)......................................................6

1  **A. INTRODUCTION**

2  This action arises out of claims that plaintiffs were subjected to
3  demeaning and humiliating racial epithets by their <u>supervisor</u> and that plaintiff
4  Gill was terminated ten days after she and her co-worker, plaintiff Kedkad,
5  reported racial harassment to their supervisor's boss, Jason Hoback, for the
6  third time without any action being taken.

7  Plaintiff opposes each and every basis for Summary Judgment or Partial
8  Summary Judgment. Defendant's Motion for Summary Judgement or Partial
9  Summary Judgment is without merit as there is sufficient disputed evidence of
10 severe or pervasive racial harassment.

11 Additionally, defendant's claim that it was unreasonable for plaintiff to
12 report the racial harassment to Jason Hoback, the Director of Sales and the
13 supervisor of the harasser, rather than the CEO, at the very least merely
14 constitutes a question of fact for the jury which goes to the issue of damages,
15 not liability.

16

17 **B. SUMMARY JUDGEMENT MAY NOT BE GRANTED UNLESS**
18 **DEFENDANT MEETS ITS BURDEN OF SHOWING THAT PLAINTIFF**
19 **CAN NOT PREVAIL AS A MATTER OF LAW, ON ANY THEORY OF**
20 **RECOVERY**

21

22 In defendant's motion for summary judgment, defendant must negate an
23 essential element of each of plaintiff's causes of action. *Wattenberger v.*
24 *Cincinnati Reds, Inc.* (1994) 28 CA 4th 746.

25 A defendant moving for summary judgment must disprove at least one
26 essential element of each cause of action, or show that an element of each
27 cause of action cannot be established. *McManis v. San Diego Postal Credit*

28

1  *Union* (1998) 61 CA 4th 547, 555.  A moving party defendant must show that,
2  under no possible hypothesis within reasonable purview of the allegations of
3  complaint, is there a material question of fact which requires examination by
4  trial. *Id*.  All doubts as to whether any material, triable issue of fact exists are
5  to be  resolved in favor of party opposing summary judgment.  *Podolsky v. First*
6  *Healthcare Corp.* (1996) 50 CA 4th 632, 642.

7  The court should strictly construe the moving parties' papers and liberally
8  construe those of opposing party to determine if there is a triable issue of
9  material fact.  *Stimson v. Carlson* (1992) 11 CA 4th 1201, 1205.  All doubts
10 as to the propriety of granting a motion should be resolved in the favor of the
11 party opposing the motion.  *Evan F. v. Hughson United Methodist Church*
12 (1992) 8 CA 4th 828, 842.

13 The moving party has the burden of establishing the absence of a genuine
14 issue of fact on each issue material to its case. *Kulesa v. Castleberry* (1996) 47
15 CA4th 103

16

17   **C.  THE LEGAL STANDARD FOR RACIAL HARASSMENT**
18   California Government Code 12940(j)(1) prohibits harassment based upon
19 any of the protected characteristics, including race.  The protection against
20 discrimination and harassment because of race includes the perception (even if
21 wrong) that the person may have any of the protected characteristics or that
22 she is associated with any of the perceived characteristics.  California
23 Government Code 12926(m).
24   A prima facie case of racial harassment is met by evidence that: 1)
25 plaintiff belongs to a protected group, 2) that plaintiff was subjected to
26 unwelcome racial harassment, 3) the harassment was based on race, 4) the
27 harassment was sufficiently pervasive or severe so as to alter the conditions of
28

1  employment. *Rodgers v. Western-Southern Life Insurance* ( 7th Cir. 1993) 12
2  F3d  668, 675.
3      Furthermore, defendant is strictly liable where the harassment is
4  perpetrated by plaintiff's supervisor. *State Dept. Of Health Services v. Superior*
5  *Court* (2003) 31 C4th 1026, 1041.
6      The level of severity or pervasiveness is generally a question of fact and
7  is dependant, on, among other things who is doing the harassing. *Brooks v.*
8  *City of San Mateo* (9th Cir. 2000) 229 F3d 917, 926.  Whether the conduct is
9  sufficiently abusive is to be determined by looking at all of the circumstances,
10 including: the frequency of the conduct, its severity, whether it involves
11 physical conduct, and whether it unreasonably interferes with an employees
12 work.  No single factor is required.  The courts must consider "all of the
13 circumstances."  *Harris v. Forklift Systems, Inc.* (1993) 510 US 17; *Hostetler*
14 *v. Quality Dining, Inc* (7th Cir. 2000) 218 F3d 798, 806.
15    Both a subjective and objective standard are used to determine whether the
16 conduct was abusive.  For purposes of summary judgment, the objective
17 standard is met if  a reasonable person <u>with the same characteristics</u> would
18 consider the conduct in question sufficiently severe or pervasive to create an
19 abusive work environment.  *Ellison v. Brady* (9th Cir. 1991) 924 F2d 872, *Fisher*
20 *v. San Pedro Peninsula Hosp.* (1989) 214 CA3d 590.
21    The required showing of severity of the harassing conduct varies inversely
22 with the frequency of the conduct; i.e. the more incidents the less severe they
23 need to be to establish a hostile environment.  *Elison, supra* at 878.
24 It has been noted that determining whether there was a hostile environment "is
25 not, and by its nature cannot be, a mathematically precise test."  *Harris v.*
26 *Forklift Systems, Inc.* (1993) 510 US 17, 22.  The courts have also noted that
27 drawing the line between actionable and non-actionable harassment is not
28

Plaintiff's Memorandum of Points and Authorities
in Opposition to Motion for Summary Judgment         - 7 -

always easy.

> "On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers...." *Baskerville v. Culligan Int'l Co.* (7th Cir. 1995) 50 F.3d 428, 430.

In the instant case it is clear that the conduct complained of is not simply occasional boorish banter. Rather it is on the "other side." Furthermore, unlike the cases relied upon by defendant, the harassing party in this case occupied a position of authority. Defendant's reference to *Lyle v. Warner Bros. Television Prods.* (2006) 38 C4th 264 does not support their argument. *Lyle,* supra involved a claim for sexual harassment based upon the discussion of writers in preparing scripts for the television show *Friends*. The work at Knowledgstorm can hardly be described as such an environment, nor comments about hating particular ethnic groups "discussion" of race as "social commentary," or "offhand comments." Rather the comments were hateful, and so clearly hostile and demeaning as to alter the recipients work environment in a very substantial way, given the fact that it was coming from plaintiff's supervisor.

The specific circumstances of the working environment and the relationship between the harassing party and the harassed can bear on whether that line is crossed. Thus in *Quantock v. Shared Marketing Services, Inc.,* (7th Cir. 2002) 312 F.3d 1408 the court reversed a summary judgment in the defendant's favor, noting the importance of the defendant's "significant position of authority" and the close working quarters. *Quantock,* supra at 1414.

As noted in *Brooks*, supra, which found one incident of physical harassment insufficient, one incident could very well be sufficient if it was perpetrated by a supervisor, rather than a coworker, as is the case in this matter. *Brooks*, supra at 927, footnote 9.

1  In *Dee v. Vintage Petroleum* (2003) 106 CA4th 30, the court held that a single racial slur by a supervisor is sufficient to constitute severe racial harassment. The Court held that the comment "it is your Filipino understanding versus mine" was sufficient to create a triable issue of fact as to racial harassment. The court noted the importance of the fact that the comment was by her supervisor, and that those factors, along with his abusive conduct toward her were sufficient to constitute racial harassment.

As noted with approval in *Dee*, supra and stated in *Rodgers v. Western-Southern Life Insurance* (7th Cir. 1993) 12 F3d 668, 675 "no single act can more quickly 'alter the conditions of employment and create a hostile an *abusive environment'... than the use of an [unambiguous] racial epithet."* In *Taylor v. Metzger* (1998) 152 N.J. 490, 508, the New Jersey Supreme Court reversed a summary judgement in which it concluded that where a supervisor makes a single racial slur, that exacerbates the severity of the remark sufficient to establish a triable issue of fact.

This case, unlike *Dee*, supra does not involve just a single incident, but rather several incidents to plaintiff Gill, as well as to plaintiff Kedkad and to another employee, Joe Niederberger, clearly establishing at a minimum a triable issue of fact as to whether their was a hostile work environment created by the supervisor.

Furthermore, in *Cruz v. Coach Store Inc*. (2nd Cir. 2000) 202 Fed 560, 570, the court held that evidence of similar slurs directed at other minorities may contribute to the overall hostility. In that respect the numerous other racial slurs that were directed at Kedkad and told to a co-worker about plaintiff's such as "sand nigger" and "camel jockey" and discussed with Gill and together reported to Hoback are further evidence of a hostile working environment created by a supervisor and of Brown's racial animus.

1   In this case we are not faced with the isolated, stray or teasing comment.
2 These comments were, with due respect to defendant's characterization as just
3 "social commentary," about as hate filled and abusive as they could get.
4 Coupled with the fact that they were made by the plaintiff's supervisor, and
5 were reported to his supervisor and yet nothing was done, clearly creates a
6 triable issue of fact as to whether they were severe enough to alter the
7 conditions of employment.

8   Finally, the same actor principle does not apply were there is direct
9 evidence of racial animus, such as this case.  That would mean that regardless
10 of the direct evidence of racial hostility and harassment, one could racially
11 harass and terminate an employee with impunity merely because he had hired
12 that person.  Furthermore, Brown's deposition testimony, which was not
13 available at the time of filing the opposition was that he could not remember
14 being the one to make the decision to hire plaintiff.  Plaintiff requests that she
15 be permitted to submit this evidence if the court finds that this issue is
16 dispositive.

### D. NO SUMMARY JUDGEMENT IS AVAILABLE ON THE BASIS OF "AVOIDABLE CONSEQUENCES"

20   Defendant's assertion that the "avoidable consequences" defense is a bar
21 to the action is incorrect.  First, the defense applies only to damages, not to
22 liability.  *State Dept. of Health Services v. Superior Court* (2003) 31 C4th
23 1026, 1045.  Also, the issue of whether plaintiff's reporting to Jason Hoback
24 on three occasions was reasonable is, at the very least, a question of fact since
25 it may be found to have been reasonable conduct in light of all of the
26 circumstances, and that Hoback's failure to report it on three occasions is
27 evidence that defendant does not have an adequate system for training,

1 reporting and dealing with such claims.  No summary judgement is available on
2 this ground.  *Myers v. Trendwest Resorts Inc*. (2007) 148 CA4th 1403, 1418.

### E. THE EVIDENCE OF RACIAL HARASSMENT SHOWS IT WAS SEVERE OR PERVASIVE

Joe Brown, Knowledgestorm's West Coast Regional manager, was both Gill and Kedkad's supervisor.  Gill and Kedkad were sales people stationed in defendant's South San Francisco office.  Jason Hoback was Brown's supervisor.  Brown and Hoback were commuting managers working out of the Atlanta and South San Francisco offices.  (Kedkad depo. 62: 24-25; 63:1-6; 64:2-17).  Joe Brown was the Regional Sales Manager and Jason Hoback was his boss, the Director of Sales.  (Niederberger depo. 23:12-25; 24:1-4).

Plaintiff Kedkad testified that he was racially harassed by Joe Brown, his supervisor and that the harassment was known to Gill.

In December 2006, Kedkad heard his supervisor, Joe Brown, say to another employee, Joe Niederberger, "What do you think of the camel jockey we've hired. Why don't you take the swat out on him so he will start making some calls." (Kedkad depo. 98:22-25; 99:1-7).  Kedkad reported these racial comments to Brown's boss, Jason Hoback at the end of January 2007.  (Kedkad depo. 103:16-22).

The week of January 15, 2007, and on other occasions as well Joe Brown ridiculed plaintiff Kedkad and said "Why are you dressed like this, this is not the Middle East." (Kedkad depo. 105:17-25; 106:1-25; 107:1-11; 108:1-14).

On January 31, 2007, after a face to face meeting with a business prospect, when Kedkad spoke to Brown's boss, Jason Hoback about the racial slurs Hoback responded: "Joe Brown is inexperienced in management and

1 might have said things that he did not mean. Please bear with us for the next
2 few months. We will give you big accounts and you will make a lot of money."
3 (Kedkad depo. 103:16-22; 104: 15-25).
4      On February 21, 2007, plaintiff was not invited to a business dinner by
5 Joe Brown in which the entire Western region was invited. A joke was made by
6 Brown that plaintiffs would not be invited to meetings in San Francisco as they
7 would scope out terrorist targets. (Kedkad depo. 121:13-25; 122:1-8
8      In February 2007, Joe Brown asked him if he had heard from plaintiff Gill
9 who was on vacation in India. Joe Brown said that maybe she won't come
10 back and anyways there are too many Indians and expressed the hope that she
11 would not return and then there would be "one less Indian." (Kedkad depo.
12 111:2-18).
13      On March 21, 2007, plaintiff Kedkad spoke to supervisor Jason Hoback
14 on the phone and reiterated the racial slurs and discrimination meted out to him
15 and Ms. Gill from Joe Brown. Hoback became angry when he reported the
16 problems. (Kedkad depo. 115:5-8; 117: 13-23).
17      In late March 2007, after a joint meeting with a business prospect, Joe
18 Brown said to plaintiff Kedkad, "You should go back to school so you can learn
19 to read, write and talk normal, like us." (Kedkad depo. 125:1-11).
20      In the latter part of April or beginning of May 2007, Kedkad was also told
21 by Gill that Brown had been using the term "sand nigger." (Kedkad depo. 4-22).
22      Plaintiff Gil also testified that she had been racially harassed by the same
23 supervisor and that both she and Kedkad reported it together to Brown's
24 supervisor. During the week of January 15, 2007, Joe Brown said to plaintiff
25 Gill, "Is that what they teach in India, you need to learn the right way, which is
26 the white man's way." (Gill depo. 139:19-25; 140: 1-6).
27      The week of January 15, 2007, Gill heard Joe Brown ridicule her co-
28

Plaintiff's Memorandum of Points and Authorities
in Opposition to Motion for Summary Judgment         - 12 -

1  worker, plaintiff Kedkad, by saying "Why are you dressed like this, this is not
2  the Middle East." (Gill depo. 163:12-18; 164:3-20).

3       On January 31, 2007, plaintiff Gill spoke to Jason Hoback and
4  complained about the racial slurs, discrimination and harassment but Hoback
5  did nothing. He said that she was just over reacting. (Gill depo.141:18-25;
6  142:1-9; 166:10-15).  This is clear evidence that Knowledgestorm does not
7  properly train its managers or take such complaints seriously.

8       On February 21, 2007 Joe Brown commented to plaintiff Kedkad that he
9  did not like Indians as they were taking all the jobs. Joe Brown asked him if he
10 had heard from plaintiff Gill who was on vacation in India. Joe Brown said that
11 maybe she won't come back and anyways, there are too many Indians here
12 who are taking away the jobs, and that he hated these Indians.  Kedkad told
13 Gill about the comment. (Gill depo. 144:17-25; 145:1-4; 145:14-25; 146:1-6).

14      On another occasion during the second week in February 2007, Brown
15 stated to plaintiff Gill that "Non-whites have a very difficult time in sales and
16 they should just pack up their bags and leave."  (Gill depo.150:3-15).

17      During the last week of March, Gill complained about these comments to
18 Jason Hoback. (Gill depo. 147: 6-22).

19      The week of March 19, 2007, Joe Brown called plaintiff Gill and shouted
20 at her and in a very threatening voice asked her if she was leaving or staying at
21 knowledgstorm. Gill depo. 167: 12-25; 168:1-25.  Brown also treated Gill
22 disrespectfully.  (Gill depo. 169:1-25).

23      The week of March 26, 2007, Joe Brown asked Gill her views on the Iraq
24 war.  When plaintiff stated that it was not the time and place for such a
25 discussion, Brown stated I don't care, I hate Muslims and I think all Muslims are
26 terrorists anyway. (Gill depo. 148: 20-25; 149:1-8).  It does not matter if Gill
27 actually was Muslim, only Brown's perception.  California Government Code
28

Plaintiff's Memorandum of Points and Authorities
in Opposition to Motion for Summary Judgment     - 13 -

1    12926(m).

2     On April 3, 2007 plaintiffs had a telephone conversation with Jason
3    Hoback. Plaintiffs Gill and Kedkad told him about the recent racial slurs and
4    discrimination from Joe Brown. Jason Hoback became very angry with them
5    and threatened plaintiffs and said that he could fire them for creating trouble.
6    (Gill depo. 172: 24-25; 173: 1-4; 174:25; 175:1-25; 176:1-15; 177:1-10).

7     Gill also observed that Brown treated other employees differently and
8    discussed the racial harassment with another employee, Mahmoud Kedkad who
9    was having a similar experience with Brown.  (Gill depo. 61:9-25; 62:1-23).

10    A former employee, Joe Niederberger, also testified that Joe Brown,
11    plaintiffs' supervisor, had on numerous occasions used the term "sand niggers"
12    and "camel jockeys" referring to plaintiffs and that he had reported it to
13    Hoback. ( Niederberger depo. 30: 9-21; 33:7-22; 36:6-20; 40: 22-25; 41:1-25;
14    42:22-25; 43 1-25; 45:3-8; 45:18-25; 46:1-17

15    On April 24, 2007, Niederberger wrote an email to Kelly Gay advising her
16    that there was racial discrimination and harassment in the South San Francisco
17    office, and that it was coming from Joe Brown.  Gay testified that this email
18    and information from Joe Niederberger was not enough to cause her to conduct
19    any investigation.

20    While these comments were being made, plaintiffs discussed the
21    comments amongst themselves and were aware of the comments being made
22    by Brown about each other and together complained about the comments to
23    Hoback, who took no action. (Gill depo. 157:2-5).

24    Defendant's reference to any of these comments being "hearsay" is a
25    misunderstanding of the hearsay rule. "Hearsay" is an out of court statement
26    introduced for the truth of the matter stated. Obviously, these statements are
27    asserted not for their truth, but as evidence that they were made. In any event

28

Plaintiff's Memorandum of Points and Authorities
in Opposition to Motion for Summary Judgment        - 14 -

they would be considered admissions against interest as an exception to the hearsay rule as well as the state of mind exception.

### F. CONCLUSION

Contrary to defendant's assertion, this case is not about isolated "discussions" of race amounting to "social commentary." Statements such as "camel jockeys," "sand niggers," needing to learn to "read, write and talk normal, like us," reference to inappropriate "middle east" clothes, as well as comments such as that he hoped plaintiff Gill would leave the country so that there would be "one less Indian," are highly offensive to the average person and certainly to someone of Middle Eastern ancestry. As the case law states, one such comment from a supervisor would be sufficient. In this case we have a repetitive pattern of harassment.

Given the fact that these comments were made by plaintiff's supervisor, the law is clear that a triable issue of fact exists as to whether this amounts to severe or pervasive harassment.

Plaintiff respectfully requests that defendant's Motion for Summary Judgement, or in the alternative, Partial Summary Judgement be denied.

Dated: May 20, 2008                    LAMBERTO & KREGER


By: /s/ Brian S. Kreger
    BRIAN S. KREGER
    Attorneys for Plaintiffs